**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

JOHN I. KING,

Plaintiff,

vs.

No. CIV 05-0575 JB/WDS
No. CIV 05-0997 JB/WDS

DIRK KEMPTHORNE, SECRETARY, UNITED STATES DEPARTMENT OF THE INTERIOR,

Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Motion for Partial Summary Judgment and Memorandum in Support, filed August 1, 2007 (Doc. 52). The Court held a hearing on February 27, 2008. The primary issue is whether Plaintiff John I. King failed to exhaust in a timely manner his administrative remedies relating to paragraphs 30 to 34 and 37 to 39 of his First Amended Complaint of Discrimination and Retaliation in Federal Employment. Because the Court finds that King did not exhaust his administrative remedies, the Court will grant the Defendant's Motion for Partial Summary Judgment.

**FACTUAL BACKGROUND**

King is a Native American employee of the United States Department of the Interior, Bureau of Indian Affairs ("the Department"). See First Amended Complaint of Discrimination and Retaliation in Federal Employment at 2, filed March 21, 2006 (Doc. 25)("Amended Complaint"). King brings this action to obtain relief and to redress alleged unlawful employment practices. See id. at 1. Paragraphs 30 to 34 of Plaintiff's First Amended Complaint state the following:

30. In September of 2003, Boyd Robinson was designated as the Acting Director

of the Office of Facilities Management and Construction ("OFMC") in New Mexico.  Specifically, beginning on September 5, 2003, and continuing thereafter, Robinson engaged in a pattern of retaliation against the Plaintiff.  On September 15, 2003, Plaintiff was placed fifth on the Inter-Office Memorandum Order of Succession, even though the Plaintiff, a GS-15 Supervisory General Engineer, was the third highest ranking official at the OFMC prior to his November 19, 2001 EEO Complaint.

31.     On December 23, 2003, Robinson again retaliated against the Plaintiff by failing to respond to Plaintiff's request that he explain why he had accused Plaintiff of making derogatory or non-constructive remarks during a Performance Improvement Team Meeting of the OFMC staff.  At the time, the Plaintiff was attempting to resolve his previous EEO Complaint against the Agency and Plaintiff perceives the non-responsiveness to his request for explanation to be retaliatory in nature.

32.     Plaintiff was again retaliated against on February 17, 2004, when Robinson failed to provide Plaintiff with any form of reply regarding Plaintiff's e-mail request for his concurrence and confirmation to recruit and replace at least one of two general engineer positions that were left vacant through the retirement of individuals in the Department.

33.     Robinson also informed Plaintiff that he wanted to make sure that one of these positions was kept open for a friend of Robinson's, one Mr. Chuck Thomas.  Later, Mr. Thomas was transferred into a specialist position in Plaintiff's Department and Plaintiff was excluded from performing his official duties and responsibilities for the Department as a result of Robinson's actions.

34.     For the next two months, from February 17, 2004 through April of 2004, Robinson failed to provide any form of reply to Plaintiff's request for his concurrence to recruit and replace the general engineer positions within the Department.

See Amended Complaint ¶¶ 30-34, at 5-6.  Paragraphs 37 to 39 state:

37.     In September of 2004, Robinson informed Plaintiff that he would not be permitted to make selections of qualified prospective candidates for vacant positions under his immediate supervision.

38.     On October 10, 2004, Robinson retaliated against the Plaintiff by making statements in a supervisory appraisal document regarding Plaintiff's EEO complaints and activities which excluded any fair or equal opportunity for the Plaintiff to apply for or to be considered for the vacant position of Chief

> of Program Planning, OFMC. Plaintiff alleges and believes that Robinson knowingly made these statements in order to prevent Plaintiff from further advancement within the BIA and to restrict his career.
>
> 39. In November of 2004, Robinson retaliated against the Plaintiff by selecting a Supervisory Facilities Management Specialist and placing him directly under Plaintiff's supervision, disregarding Plaintiff's selection for the position when Plaintiff was the responsible officer in charge of the Division of Operation and Management.

Amended Complaint ¶¶ 37-39, at 6-7.

On May 5, 2004, King contacted an Equal Employment Opportunity ("EEO") counselor and filed a complaint of discrimination. See Defendant's Motion for Partial Summary Judgment, filed August 8, 2007 (Doc. 52)("Motion for Summary Judgment"), Exhibit D, United States Department of the Interior Complaint of Discrimination (indicating May 5, 2004 as the date King first contacted an EEO counselor)("May 5th Complaint"). In his May 5th Complaint, King checked "Reprisal"as the alleged basis of discrimination and attached two documents -- one in response to his "Reprisal" response in block 3 of the form, titled "Attachment for Block 3. Basis(es) for belief of Discrimination," and one in response to his answer to the question in block 4 allegations of discrimination, titled "Attachment for Block 4. Allegation(s)." May 5th Complaint at 1-6.

**PROCEDURAL BACKGROUND**

King brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a), asserting that he was discriminated against on the basis of race and that he was retaliated against for engaging in protected activity. See Amended Complaint at 1. The Department brings this motion for partial summary judgment pursuant to rule 56 of the Federal Rules of Civil Procedure with respect to King's allegations in paragraphs 30 to 34 and 37 to 39 in his Amended Complaint. See Motion for Summary Judgment. Specifically, the Department

requests that the Court grant partial summary judgment with respect to the allegations in paragraphs 30 to 34 and 37 to 39 on the basis that King failed to exhaust his administrative remedies in a timely manner because he did not consult with an EEO counselor within 45 days of the alleged discriminatory events or retaliatory events as 29 C.F.R. § 1614.105(a)(1) requires. See Motion for Summary Judgment at 1-2.

The Department argues that King last contacted an EEO counselor on May 5, 2004, raising only claims of retaliation against his current supervisor, Boyd Robinson. See Motion for Summary Judgment at 6; May 5th Complaint. The Department asks, under the Federal Rules of Evidence, that the Court take judicial notice that forty-five days before May 5, 2004 was March 21, 2004. See Motion for Summary Judgment at 6. The Department argues that paragraphs 30 to 33 of the Amended Complaint, on their face, occurred before March 21, 2004 and that the incident described in paragraph 34 of the Amended Complaint only states the continued failure of Boyd Robinson to respond to a request King made on February 17, 2004, which King already alleged in paragraph 32. See Motion for Summary Judgment at 7. The Department contends that the incidents alleged in paragraphs 37 to 39 of the Amended Complaint, on their face, occurred after May 5, 2004, the date of King's last alleged contact with an EEO counselor and thus were not timely exhausted. See Motion for Summary Judgment at 7; May 5th Complaint.[1]

---

[1] The Court notes that in its Reply, the Department states:

> Even if Plaintiff had timely raised a hostile work environment claim as to the acts of Boyd Robinson alleged in Paragraphs 30-34 of the First Amended Complaint for Discrimination and Retaliation, it is clear from the allegations on their face that they do not meet the objective "severe and pervasive" test for hostile work environment claims. Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998). Indeed, in Paragraph 31, Plaintiff acknowledges that "he perceives the non-responsiveness to his request for explanation to be retaliatory in nature." This is not objective.

King filed a response to the Defendant's Motion for Partial Summary Judgment on August 28, 2007. See Plaintiff's Response to Defendant's Motion for Partial Summary Judgment, filed August 28, 2007 (Doc. 53)("Plaintiff's Response"). In his response, King states that paragraphs 30 to 33 of his Amended Complaint show a continued pattern of conduct by Robinson leading up to his EEO complaint of May 5, 2004 and that his allegation in paragraph 34 alleges that Robinson failed to provide him any form of reply from February 17, 2004 through April of 2004, which encompasses the time period through March 21, 2004, and thus timely raises the pattern of conduct. See Plaintiff's Response at 2. King also argues that he raised the incidents alleged in paragraphs 37 to 39 of his Amended Complaint in his Notice to Amended Complaint in EEO Case No. 350-2004-0215X. See Plaintiff's Response at 2. King states that, although the EEOC denied his Motion to Amend, it is clear that, because of his request, the Agency had notice of his claims on November 24, 2004. See id.

On September 17, 2007, the Department filed a Reply in support of its motion. See Reply in Support of Defendant's Motion for Partial Summary Judgment (Doc. 52), filed September 17, 2007 (Doc. 57)("Defendant's Reply"). The Department argues that neither of King's arguments has merit in light of the Supreme Court of the United States' ruling in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002)(stating that "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice")(internal citations and quotations omitted), and the United States Court of Appeals for the Tenth Circuit's rulings in Davidson v. American Online, Inc., 337 F.3d 1179, 1184 (10th Cir.

---

Defendant's Reply at 2-3, n.3. Because the Court finds that King did not timely exhausted his administrative remedies, the Court need not address whether King properly alleged hostile work-environment claims in his Amended Complaint.

2003)(stating that "Morgan implicitly overturns prior Tenth Circuit law in that plaintiffs are now expressly precluded from establishing a continuing violation exception for alleged discrete acts of discrimination occurring prior to the limitations period, even if sufficiently related to those acts occurring within the limitations period"), and in Martinez v. Potter, 347 F.3d 1208, 1210-11 (10th Cir. 2003)(stating "[t]he rule is equally applicable . . . to discrete claims [of retaliation] based on incidents occurring after the filing of Plaintiff's EEO complaint.")(emphasis in original).  See Defendant's Reply at 1-2. The Department notes that King's EEO complaint and the First Amended Complaint, with respect to the allegations against Robinson, make no mention of a hostile work-environment claim.  See Plaintiff's Reply at 2-3.  The Department argues that the incidents alleged in paragraphs 30 to 34 are discrete acts of retaliation which require timely exhaustion.  See Defendant's Reply.  Furthermore, the Department argues that, regarding paragraphs 37 to 39, it is important for the Court to note that the attempted amendment was denied by the EEOC administrative law judge because the claims in the attempted amendment were not "like or related to" the claims in BIA Case No. 03-045, because the claims in BIA Case No. 03-345 involved a different supervisor, Ken Ross.  See Defendant's Reply at 5; Defendant's Reply, Exhibit G, Agency's Response to Complainant's Notice of Amended Compliant [sic] ("Agency's Response"). The Department notes that King could have sought to amend his claims against Robinson in BIA Case No. 04-044, either before or after his attempted amendment was denied, but did not do so.  See Defendant's Reply at 5.  Thus, the Department argues that King did not provide a meaningful opportunity to the agency or the EEOC to address his claims asserted in paragraphs 37 to 39 of his Amended Complaint.  See Defendant's Response at 5.

At the February 27, 2008 hearing, King argued that the allegations set forth in paragraphs

30 to 33 of his Amended Complaint show a continued pattern by his supervisor that led up to his EEO complaint and thus that he is alleging that his work place was a hostile-work environment. See Transcript of Hearing at 5:14-21 (taken February 27, 2008)("Tr.")(Dahl).[2] Accordingly, King contended that, when there is a continuing pattern involved, it is sufficient if one of the acts within the pattern falls within the 45 day limitations period. See id. at 5:22-25 (Dahl).

**LAW ON CLAIMS FOR DISCRIMINATION AND HOSTILE WORK ENVIRONMENT**

The caselaw has established that claims for discrimination under § 1981 and claims of hostile-work environment are different claims with distinct elements and distinct proof. Hostile-environment claims are not a subset of discrimination claims. Accordingly, an allegation of discrimination does not give fair notice of a hostile-environment claim.

**1. Discrimination Claims.**

To state a claim under 42 U.S.C. § 1981, a claimant must show that a defendant intentionally or purposefully discriminated against him or her. See Reynolds v. Sch. Dist. No. 1, Denver, Colorado, 69 F.3d 1523, 1532 (10th Cir. 1995). "Section 1981 prohibits racial discrimination in 'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" Id. (quoting 42 U.S.C. § 1981). "To establish a prima facie case of termination on the basis of race, a plaintiff must show that [(i)] he is a member of a protected class; [(ii)] he is qualified for the job and was performing the job satisfactorily; and [(iii)] he was terminated under circumstances giving rise to an inference of discrimination." Martin v. Cent. States Emblems, Inc., 150 Fed.Appx. 852, 858 (10th Cir. 2005).

[2] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

See Lindsey v. Thompson, No. 06-7114, 2007 WL 2693970 at *2 (10th Cir. Sept. 10, 2007)(holding that the plaintiff failed to state a claim under § 1981, because there was no allegation that the defendant intentionally discriminated against him on the basis of race); Gonzalez v. United States Air Force, 88 Fed.Appx. 371, 378 (10th Cir. 2004)(holding that a plaintiff failed to state a claim under § 1981 because she was suing the military but military acts are under "color of federal rather than state law" and nowhere did the plaintiff allege she was discriminated against on the basis of her race).

In Trujillo v. Board of Education of the Albuquerque Public Schools, No. CIV 02-1509 JB/RLP, 2006 WL 4079033 (D.N.M. June 9, 2006)(Browning, J.), the plaintiff's Count I of her complaint alleged her employment application was rejected "in favor of a less-qualified non-Hispanic male" and that there was "discrimination by virtue of Plaintiff's national origin, Hispanic (Puerto Rican) and sex, female . . . ." Trujillo v. Bd. of Educ. of the Albuquerque Pub.Sch., 2006 WL 4079033 at *1 (emphasis in original). The plaintiff's Count II alleged § 1981 discrimination and incorporated Count I by reference. See id. The plaintiff contended "that she intended to assert race as grounds for her § 1981 claims." Id. at *5 (internal quotations omitted). The plaintiff explained "that she used the words 'Hispanic (Puerto Rican),' and alleged that her job application was rejected 'in favor of a less-qualified non-Hispanic male,' to indicate the racial nature of the alleged discrimination." Id. The Court concluded that the plaintiff had "sufficiently stated a claim for racial discrimination." Id. "It is reasonable to infer that [the plaintiff] based her § 1981 claim and punitive damages on this alleged act of racial discrimination, just as she did for her Count I claim." Id. The plaintiff's language referencing "unlawful treatment because of her ethnicity as an Hispanic" fit within § 1981. Id.

The Court notes that the prima facie elements for discriminatory discharge under § 1981 are the same as the prima facie elements for discriminatory discharge under Title VII. See Smith v. Potter, 252 Fed.Appx. 224, 225 (10th Cir. 2007). The prima facie elements for discrimination based on retaliation and disparate treatment under Title VII are different. See Juarez v.Utah, No. 06-4254, 2008 WL 313671 at **7-8 (10th Cir. February 5, 2008)(noting that the prima facie elements for discrimination based on retaliation under Title VII are: "[(i)] she engaged in protected opposition to discrimination; [(ii)] a reasonable employee would have found the challenged action materially adverse; and [(iii)] a causal connection exists between the protected activity and the materially adverse action," and noting that the prima facie elements for discrimination based on disparate treatment under Title VII are: "[(i)] that [s]he is a member of a [protected class], [(ii)] that [s]he suffered an adverse employment action, and [(iii)] that similarly situated employees were treated differently.")

**2. Hostile-Work Environment Claims.**

"To establish a prima facie case of hostile work environment harassment, a plaintiff must show that 'under the totality of circumstances [(i)] the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and [(ii)] the harassment was racial or stemmed from racial animus.'" Bloomer v. United Parcel Serv., Inc., 94 Fed.Appx. 820, 825 (10th Cir. 2004)(quoting Witt v. Roadway Express, 136 F.3d 1424, 1432 (10th Cir. 1998). See Carter v. Mineta, 125 Fed.Appx. 231, 238 (10th Cir. 2005)(affirming dismissal of hostile-environment claim where the plaintiff failed to list that claim in her initial EEOC complaint, and she also failed to describe a hostile-work environment claim in the narrative portion of her complaint); Mitchell v. City and County of Denver, 112 Fed.Appx. at 671 ("Under § 1981, a prima facie case of racial

harassment/hostile work environment requires [a showing that] under the totality of circumstances [(i)] the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and [(ii)] the harassment was racial or stemmed from racial animus.")(internal quotations omitted).

In 2002, the Supreme Court held that a complaint in an employment-discrimination lawsuit need not contain specific facts establishing a prima-facie case under the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) standard, but rather a "short and plain statement of the claim showing that the pleader is entitled to relief." Swierkiewicz v. Sorema N.A., 534 U.S. 508, 509 (2002) (quoting Fed. R. Civ. P. 8(a)(2)). The Supreme Court explained:

> This case presents the question whether a complaint in an employment discrimination lawsuit must contain specific facts establishing a prima facie case of discrimination under the framework set forth by this Court in McDonnell Douglas Corp v. Green, 411 U.S. 792 . . . . We hold that an employment discrimination complaint need not include such facts, and instead must contain only a short and plain statement of the claim showing that the pleader is entitled to relief.

Swierkiewicz v. Sorema N.A., 534 U.S. at 508 (internal citations and quotations omitted). Justice Thomas noted for the Supreme Court that the prima facie case under McDonnell Douglas "is an evidentiary standard, not a pleading requirement." Id. at 511.

Justice Thomas explained that this pleading rule was proper; "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the McDonnell Douglas framework does not apply in every employment discrimination case." Swierkiewicz v. Sorema N.A., 534 U.S. at 512. The Supreme Court reiterated that a short and plain statement "must simply give the defendant fair notice of what the defendant's claim is and the grounds upon which it rests." Id. at 513. The Supreme Court noted that "[r]ule 8(a)'s simplified pleading standard applies to all civil actions." Id. at 514. Justice Thomas explained, for the

Supreme Court that, if a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant may move for a more definite statement or move for summary judgment under rule 56 if a claim lacks merit. See id. at 515.

The Supreme Court held that the plaintiff in Swierkiewicz v. Sorema N.A. sufficiently alleged claims of wrongful termination on account of his national origin and on account of his age by detailing the events leading to his termination, providing the relevant dates, and including the ages and nationalities of the persons involved in his termination and as such, gave the defendant fair notice of his claims and the grounds upon which they rested. See id. at 515. See also United States v. Gustin-Bacon Div. Certain-Teed Prod. Corp., 426 F.2d 539, 542 (10th Cir. 1970)("We find no suggestion in the Civil Rights Act of 1964 nor in the debates prior to its enactment, which supports appellees' contention that Congress intended to require the Attorney General to revert to a detailed pleading of evidentiary matters.").

On the other hand, the Tenth Circuit determined that Swierkiewicz v. Sorema N.A. was inapplicable in a case where it was determining whether a plaintiff's § 1981 claim was sufficient under rule 12(b)(6) of the Federal Rules of Civil Procedure. The Tenth Circuit stated in Mahon v. American Airlines, Inc. that Swierkiewicz v. Sorema N.A. is inapplicable where the district court is "dismiss[ing the plaintiff]'s § 1981 claim because he failed to allege a prima facie case of discrimination under the McDonnell Douglas framework." Mahon v. Am. Airlines, Inc., 71 Fed.Appx. 32, 35 (10th Cir. 2003). See United States v. Gustin-Bacon Div. Certain-Teed Prod. Corp., 426 F.2d at 543 (stating that "Congress meant . . . that [if] a pattern or practice of racial discrimination in employment exists, [it] must be reflected on the fac[e] of the complaint.").

To establish a hostile-work environment claim, "a plaintiff must show that a rational jury

could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Davis v. United States Postal Serv., 142 F.3d 1334, 1341 (10th Cir.1998)(internal citations and quotations omitted). "A discriminatory and abusive environment must affect the employee's work environment so substantially as to make it intolerable for her to continue." Creamer v. Laidlaw Transit, Inc., 86 F.3d 167, 170 (10th Cir.1996)(holding that a work environment did not contain "pervasive" harassment when the plaintiff made general allegations of frequent "sexual slurs" and the only specific incident cited to involved a co-worker grabbing the plaintiff). "The mere utterance of a statement which 'engenders offensive feelings in an employee' would not affect the conditions of employment to a sufficient[ly] significant degree to violate Title VII.'" Gross v. Burggraf Construction Co., 53 F.3d 1531, 1537 (10th Cir.1995)(quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)(alteration in the original)).

Moreover, the plaintiff must demonstrate that the work environment was objectively and subjectively offensive, but need "not demonstrate psychological harm, nor is she required to show that her work suffered as a result of the harassment." Walker v. United Parcel Service of Am., 76 Fed.Appx. 881, 885 (10th Cir. 2003). Relevant considerations to determine if an environment is objectively hostile includes, in addition to looking at all the circumstances: "[T]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. at 787-88 (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993))(internal citations and quotations omitted).

**TITLE VII AND ITS EXHAUSTION REQUIREMENT**

Title VII of the Civil Rights Act of 1964 prohibits an employer from "fail[ing] or refus[ing] to hire or . . . discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may use direct evidence or indirect evidence, with a burden-shifting method, to establish a case under Title VII. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-803 (1973).

A plaintiff generally must exhaust his or her administrative remedies before pursuing a Title VII claim in federal court. See Khader v. Aspin, 1 F.3d 968, 970 (10th Cir. 1993). Exhaustion of administrative remedies is central to Title VII's statutory scheme, because it provides the EEOC with the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and of promoting conciliatory efforts. See Patterson v. McLean Credit Union, 491 U.S. 164, 180-81 (1989); Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994). "'[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge.'" Welsh v. City of Shawnee, 182 F.3d 934, 935 (10th Cir. 1999)(quoting Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 127 (7th Cir. 1989)).

To exhaust administrative remedies, an individual claimant must: (i) first and timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge; and (ii) receive notice of the right to sue. See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999); 42 U.S.C. §§ 2000e-5(b), (c), (e),

(f)(1). "[A] plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter." Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d at 1321. Once an individual receives notice of the right to sue, he or she has ninety days in which to file suit. See 42 U.S.C. § 2000e-5(f)(1). "[A]llegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." Welsh v. City of Shawnee, 182 F.3d at *5. See Rush v. McDonald's Corp., 966 F.2d 1104, 1110-11 (7th Cir. 1992)(noting the plaintiff's EEOC affidavit contained "explicit reference" to types of discrimination alleged in the complaint); Box v. A & P Tea Co., 772 F.2d 1372, 1375 (7th Cir.1985)(noting that handwritten addendum to typed charge of race discrimination, also suggesting sex discrimination, was sufficient to permit a judicial claim).

"Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII." Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996)(quotation omitted). The filing of a timely charge of discrimination with the EEOC is a jurisdictional prerequisite to the institution of a lawsuit based on a claim of employment discrimination under Title VII. See Keller v. Prince George's County, 827 F.2d 952, 956 (4th Cir. 1987); Romero v. Union Pac. R.R., 615 F.2d 1303, 1303 (10th Cir. 1980). Without such a filing, federal courts lack subject-matter jurisdiction to entertain Title VII claims, and a rule 12(b)(1) motion to dismiss is procedurally proper. See Seymore v. Shawyer & Sons, Inc., 111 F.3d 794, 799 (10th Cir. 1997); Carmody v. SCI Colo. Funeral Servs., Inc., 76 F. Supp. 2d 1101, 1103-1104 (D. Colo.1999).

Before 2002, the Tenth Circuit recognized a limited exception to the "exhaustion rule for Title VII claims when the unexhausted claim is for discrimination like or reasonably related to the

allegations of the EEOC charge." Simms v. Oklahoma ex. rel. Dep't of Mental Health and Substance Abuse Servs., 165 F.3d at 1327 (internal citations and quotations omitted). The Tenth Circuit "construed the reasonably related exception to include most retaliatory acts subsequent to an EEOC filing." Id. (citing Seymore v. Shawyer & Sons, Inc., 111 F.3d at 799). In Martinez v. Potter, 347 F.3d 1208 (2003), however, the Tenth Circuit noted that the "Supreme Court's pronouncement in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 . . . (2002), has effected fundamental changes to the doctrine allowing administratively unexhausted claims in Title VII actions." 347 F.3d at 1209. The Tenth Circuit stated:

> We agree with the government that such unexhausted claims involving discrete employment actions are no longer viable. Morgan abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with the teaching that each discrete incident of such treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted.

347 F.3d at 1209 (internal citations and quotations omitted).

"Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." National R.R. Passenger Corp. v. Morgan, 536 U.S. at 114 (internal citations and quotations omitted). In National Railroad Passenger Corp. v. Morgan, this rule applied to bar a plaintiff from suing on claims for which no administrative remedy had been sought when those incidents complained of occurred more than 300 days before the filing of Plaintiff's EEO complaint. See Martinez v. Potter, 347 F.3d at 1210. "The rule is equally applicable, however, to discrete claims based on incidents occurring after the filing of Plaintiff's EEO complaint." Id. The Tenth Circuit has stated: "Our decisions have unambiguously recognized Morgan as rejecting application of the continuing violation theory." Martinez v. Potter,

347 F.3d at 1211 (internal quotations omitted).

Furthermore, under National Railroad Passenger Corp. v. Morgan and Davidson v. America Online, Inc., a series of events that constitute a hostile-environment claim are considered one unlawful action. See West v. Norton, 376 F.Supp.2d 1105, 1129 (D.N.M. 2004)(Browning, J.). "Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." National Railroad Passenger Corp. v. Morgan, 536 U.S. at 115 (internal citations and quotations omitted). An "unlawful employment practice" thus cannot be said to occur on any particular day, but rather occurs over a series of days or years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Id. (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)("As we pointed out in Meritor [ Savings Bank, FSB v. Vinson . . . mere utterance of an . . . epithet which engenders offensive feelings in a[n] employee . . . does not sufficiently affect the conditions of employment to implicate Title VII.")(internal quotations and citations omitted)). Thus, so long as one of the incidents included within the claim of hostile environment occurred within the 45-day time limit provided for under 29 C.F.R. § 1614.105(a)(1), other conduct that occurred outside of the proscribed time period, but contributing to the hostile-work environment, is not time barred. See West v. Norton, 376 F.Supp.2d at 1129.

"A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." MacKenzie v. City & County of Denver, 414 F.3d 1266, 1274 (10th Cir. 2005). See Jones v. Sumser Retirement Village, 209 F.3d 851, 853 (6th Cir. 2000)(noting "the facts alleged in the charge must be sufficiently related to the claim such that those facts would prompt an investigation of the claim."). "We liberally construe charges filed with the EEOC in determining

whether administrative remedies have been exhausted as to a particular claim." Jones v. United Parcel Serv., Inc., 502 F.3d 1176, 1186 (10th Cir. 2007). "[T]he charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim." Id. "The failure to mark a particular box creates a presumption that the charging party is not asserting claims represented by that box." Id. (citing Gunnell v. Utah Valley State College, 152 F.3d 1253, 1260 (10th Cir. 1998)). "The presumption may be rebutted, however, if the text of the charge clearly sets forth the basis of the claim." Jones v. United Parcel Serv., Inc., 502 F.3d at 1186.

In two recent opinions, the Tenth Circuit has addressed the issue whether a plaintiff properly alleged and exhausted his claims in his EEO charge. In Jones v. United Parcel Service, Inc., Jones filed suit against the United Parcel Service for discrimination based on disability, retaliation and failure-to-accommodate. See 502 F.3d at 1186. Jones was a package car driver. See id. at 1180. One of the requirements of a driver was to be able to lift a package weighing up to seventy pounds overhead. See id. Jones injured his shoulder at work. See id. A UPS company doctor examined Jones and released him to work modified duty on the condition that he limit his lifting to twenty pounds. See id. Because of his lifting restrictions, UPS told Jones he could no longer work for UPS. See id. Jones contacted his union representative who suggested that Jones be examined by another doctor. See id. Jones followed this advice and was reexamined by his own doctor, who said Jones was able to return to work as a package car driver without restrictions. See id. Before returning to work, Jones had to be approved by a UPS doctor. See id. The UPS doctor -- a doctor different from the one who originally imposed restrictions -- determined that Jones could return to work without restrictions, but then was later contacted by another UPS employee informing him that another doctor had previously placed a permanent restriction on Jones and asked the doctor to change the

restriction.  See id.  The doctor then changed the restriction, which precluded Jones from working for UPS.  See id.

Jones filed a grievance with the union regarding UPS' refusal to return him to work.  See id. A panel heard Jones' grievance and determined that Jones should get a third doctor's opinion.  See id.  UPS told the third doctor that he was to solely base his medical opinion on past medical records and not a new examination.  See id. at 1182.  Thus, using only Jones' past medical records, the doctor opined that he could not perform the essential functions of a package car driver.  See id. Jones filed an additional grievance with the union and an intake questionnaire with the EEOC, alleging UPS discriminated against him.  See id. at 1182.

On the EEO questionnaire, Jones checked "no" to the questions, "[d]o you believe that the employer regarded you as disabled?" and "did you advise your employer that you required an accommodation?" Id. at 1186-87.  Jones also failed to check the box on the questionnaire indicating that he was discriminated against on the basis of race, and failed to check one of the two boxes indicating he was bringing a claim of retaliation.  See id.  Jones checked, however, the box for disability on a different page of the form, indicating that his managers made statements prejudicing him regarding race.  See id.  Jones also filled out a portion of the questionnaire that he was instructed to answer only if he believed he was not hired because of a disability.  See id.  In the narrative portion of the questionnaire, Jones described the discriminatory conduct as follows: "Injured on 10/6/03.  On 12-4/-3 Dr. Stech-Schulte placed permanent restriction on me, On 2-3-04 Dr. Michael J. Poppa release[d] me to return to full duty, On 2-9-04 Dr. Legler release[d] me to return to full duty.  After UPS contacted Dr. Legler, Dr. Legler changed restriction on 2/9/04." Id. at 1187. The Tenth Circuit held that Jones' questionnaire constituted a charge, and that the facts alleged in his

charge created a situation where an administrative investigation of his claim of discrimination based on disability and his claim of retaliation could have reasonably been expected to follow. See id. at 1186.

The Tenth Circuit held in Jones v. United Parcel Service, Inc. that Jones' allegations that UPS interfered with a medical evaluation to ensure Jones was not released to return to work, that UPS did not permit Jones to return to work despite releases from two doctors, and that Jones checked a box for retaliation, should have triggered an administrative investigation into whether UPS discriminated against Jones because he was disabled and whether UPS retaliated against him. See id. at 1187. Thus, the Tenth Circuit held that Jones exhausted his claims of discrimination based on disability and his claim of retaliation. See id. at 1187. The Tenth Circuit held that Jones' claim of failure-to-accommodate, however, was not within the scope of his administrative charge. See id. Because Jones checked "no" in response to the question whether he advised his employer he needed accommodation and because the text of the charge did not contain facts that would prompt an investigation of such a claim, the Tenth Circuit held that Jones did not exhaust his administrative remedies with respect to that claim. Id.

In Anderson v. Clovis Municipal Schools, No. 07-2160, 2008 WL 410435 (10th Cir. February 15, 2008), the Tenth Circuit addressed whether the district court was correct in finding that it lacked jurisdiction over Anderson's claims of hostile-work environment because Anderson had failed to raise them before the EEOC. See id. at **5-6. The Tenth Circuit noted that "[a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." Id. at 6 (internal citations and quotations omitted). Anderson filed a charge of racial discrimination with the

EEOC, but did not specifically note "hostile work environment" and "constructive discharge" on the complaint form. Id. The Tenth Circuit held that, because it is required to "liberally construe charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim . . . the . . . additional legal theor[y] . . . [of retaliation] w[as], in factual substance, sufficiently alleged in the EEOC filing." Id. The Tenth Circuit noted that Anderson stated that "[b]eginning in February 2005 and continuing on a continuous basis I have been subjected to adverse terms and conditions unlike my peers." Id. (internal quotations and citations omitted). Furthermore the Court noted that Anderson "checked the box indicating that the discrimination was based on his race." Id. Ultimately the Tenth Circuit held, "like the court in Jones, we think these two claims can reasonably be expected to follow the charge of discrimination . . . and thus conclude that Anderson's charge was sufficient to exhaust his administrative remedies and thereby confer jurisdiction." Id. (internal citations and quotations omitted).

**ANALYSIS**

The Department brings this motion with respect to allegations in paragraphs 30 to 34 and paragraphs 37 to 39 of King's Amended Complaint, because it contends that King failed to exhaust his administrative remedies in a timely manner. Specifically, the Department contends that King did not consult with an EEO counselor within 45 days of the alleged discriminatory events or retaliatory events, as 29 C.F.R. §1614.105(a)(1) requires. The Court does not believe that King's claim of hostile-work environment can reasonably be expected to follow the charge of discrimination and retaliation in King's EEO complaint. Because the Court does not believe that King's EEO charge put the EEO on notice that he was alleging a hostile-environment claim, but rather individual incidents of retaliation, King's allegations in paragraphs 30-34 and 37-39 were

discrete acts that do not come under the continuing-violation doctrine and must be brought before the EEO within 45 days of their occurrence.  Thus, the Court will grant Defendant's Motion for Partial Summary Judgment.

"A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." MacKenzie v. City & County of Denver, 414 F.3d at 1274.  See Jones v. Sumser Retirement Village, 209 F.3d at 853 (noting "the facts alleged in the charge must be sufficiently related to the claim such that those facts would prompt an investigation of the claim."). Furthermore, the Court "liberally construe[s] charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim." Jones v. United Parcel Serv., Inc., 502 F.3d at 1186.  "[T]he charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim." Id.  "The failure to mark a particular box creates a presumption that the charging party is not asserting claims represented by that box." Id. (citing Gunnell v. Utah Valley State College, 152 F.3d at 1260).  "The presumption may be rebutted, however, if the text of the charge clearly sets forth the basis of the claim." Jones v. United Parcel Service, Inc., 502 F.3d at 1186.

In King's May 5th Complaint, King checked the box for "Reprisal."  May 5th Complaint at 1. King also attached two written documents: in one document he provided specific information about the reprisal, and in the other, he provided specific information about his allegations of discrimination.  See May 5th Complaint at 2-4.  In the document that explained King's "Reprisal" answer, King alleges that he was discriminated and retaliated against because of his previous EEO complaints.  Id. at 2.  King also states: "[Robinson's] actions demonstrate the continued

discriminatory and retaliatory actions originated by the former OFMC Director, Laverne W. Collier and Acting Director, Ken Ross.  Boyd's action continues to undermine my supervisory and management duties." Id. at 2.

In King's document that provides specific information about his allegations of discrimination, King wrote ten paragraphs, nine of which begin by providing a specific date, the words "I was retaliated against by Boyd Robinson," and a description of a specific incident.  Id. at 3-4.  In each of these paragraphs, King writes a similar sentence: "[Robinson's] actions demonstrate the continued discriminatory and retaliatory actions originated by the former OFMC Director, Laverne W. Collier and Acting Director, Ken Ross."  Id. at 3-4.

The Court does not believe that the proper scope of the administrative investigation following King's May 5th Complaint to the EEO reasonably encompasses a claim of hostile work environment.  The Court does not believe that his separate allegations, all stating incidents of retaliation, reasonably allege hostile-work environment, but rather set forth discrete acts of retaliation.  King's repeated use of a sentence, indicating that Boyd's actions demonstrate the continued discriminatory and retaliatory actions originated by the former and acting directors, do not transform King's discrete allegations of retaliation into a claim for a hostile-work environment.  Additionally, the Court notes that, in paragraph 41 of King's Amended Complaint, he states: "Plaintiff filed a Complaint with the EEO, alleging retaliation which was assigned File No. BIA-04-044." Amended Complaint at 7.  BIA-04-044 is the number that appears on King's May 5th Complaint to the EEO.  See May 5th Complaint at 1.

Furthermore, King's situation is different from Jones and Anderson's situations in Jones v. United Parcel Service, Inc., and  Anderson v. Clovis Municipal Schools,  because in those Tenth

Circuit cases, the EEO charges had other information supporting a finding that the plaintiffs were properly alleging the claims in question. In Anderson v. Clovis Municipal Schools, the Tenth Circuit noted that Anderson "checked the box indicating that the discrimination was based on his race." 2008 WL 410435, *6. Anderson also included the following sentence in his charge: "Beginning in February 2005 and continuing on a continuous basis I have been subjected to adverse terms and conditions unlike my peers." Id. at 6. The Tenth Circuit held in Jones v. United Parcel Service, Inc. that Jones' allegations in the body of his EEO complaint that UPS interfered with a medical evaluation to ensure Jones was not released to return to work, that UPS did not permit Jones to return to work despite releases from two doctors, and that Jones checked a box for retaliation, should have triggered an administrative investigation into whether UPS discriminated against Jones because he was disabled and whether UPS retaliated against him. See id. at 1187.

The Court believes that King's case is distinguishable from Jones v. United States Parcel Services, Inc. and that King's EEO complaint did not allege a claim for hostile-work environment. Specifically, King did not check a particular box that would have indicated to the EEO that he was alleging hostile-work environment. Nor does the text of his charge "clearly sets forth the basis of the claim." Jones v. United Parcel Serv., Inc., 502 F.3d at 1186.

Furthermore, King does not make a statement like Anderson stating that, beginning on a certain date, he was continuously subject to adverse terms and conditions. Rather, King provides a list of distinct dates and events, and includes a repeated sentence that indicates that the discrimination and retaliation he was currently experiencing was similar to prior discrimination which he did not specifically allege in his May 5th Complaint to the EEO. King's May 5th Complaint details specific actions of his current supervisor and then states that such actions

demonstrate continued discrimination that began with others.   King, however, alleges facts supporting only Robinson's specific acts.

The Court does not believe that King alleges a claim of hostile work environment in his May 5th EEO Complaint. "The charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim."   Jones v. United Parcel Service, Inc., 502 F.3d at 1186. Because King alleges only facts regarding the specific incidents involving Robinson, and not any facts that underlie the continuing discrimination that he alleges started with other individuals and is now demonstrated by the individual acts of Robinson, King does not allege a claim of hostile environment.  Furthermore, that King lists multiple incidents of retaliation does not mean that he is alleging a continuing pattern under hostile-work environment.  Rather, King alleges discrete acts of retaliation committed by Robinson which require timely exhaustion.

King's allegations in paragraphs 30 to 33 are discrete acts and were not timely exhausted, because King failed to file a complaint with the EEO within 45 days of the alleged incidents.  The Court also believes that King failed to exhaust his allegations in paragraph 34. The discrete act of retaliation by Robinson -- purportedly failing to respond to King's email request -- occurred on February 17, 2004.  King failed to timely exhaust his allegation in paragraph 34 because he failed to file a complaint with the EEO within 45 days of February 17, 2004.  Although King alleges that Robinson repeatedly failed to respond through April of 2004, the discrete act of retaliation occurred on February 17, 2004 and should have been exhausted in a timely manner.   King's repeated allegation that Robinson failed to respond through April 2004 does not excuse his failure to exhaust the February 17, 2004 incident.  Thus, King also failed to timely exhaust his allegations in paragraph 34.

Furthermore, in paragraphs 37 to 39, King alleges incidents that occurred after his May 5th EEO Complaint.  See Amended Complaint at 5-6.  Because the Court has found that King did not allege a claim of hostile-work environment in his May 5th Complaint with the EEO, the Court finds that each of these claims are also discrete acts.  The Tenth Circuit has stated that a claim, based on discrete incidents occurring after the filing of a plaintiff's EEO complaint, is an incident that constitutes its own unlawful employment practice for which administrative remedies must be exhausted.  See  Martinez v. Potter, 347 F.3d at 1209.  While King argues that he gave notice to the EEO within 45 days of the allegations by his attempted amendment to his EEO Complaint, the Court does not find this sufficient for exhaustion.  The Tenth Circuit states: "The twofold purpose of the exhaustion requirement is to give notice of an alleged violation to the charged party and to give the administrative agency an opportunity to conciliate the claims in furtherance of Title VII's goal of securing voluntary compliance." Woodman v. Runyon, 132 F.3d 1330, 1342 (10th Cir. 1997). Thus, notice must be given at a meaningful time in the administrative process. King did not provide meaningful notice here, because he attempted to amend his complaint in the incorrect case, made no attempt to amend the correct case, and did not provide the EEO with the opportunity to investigate or attempt to resolve his additional allegations.

Because the amendment was denied, King's additional allegations were not part of the proceedings that the administrative law judge heard.  Further, under the EEO regulations, a hearing before an administrative law judge occurs after the pre-complaint counseling and after the investigation of the claims has been completed.  See 29 C.F.R. §§ 1614.105, 1614.108 and 1614.109. Thus, there was no timely opportunity for informal pre-complaint resolution or investigation by the agency into these additional allegations.  King's attempted amendment to his claims regarding

Robinson was denied by the EEOC administrative law judge, because the claims in the attempted amendment were not "like or related to" the claims in BIA case No. 03-45, which involved a different supervisor, Ken Ross. Agency Response at 1-2. King could have sought to amend his claims against Robinson in BIA Case No. 04-044, but he did not. Thus, the Court finds, contrary to King's assertion that he gave the EEO proper notice of his claims within 45 days, his attempted amendment in a case not "like or related" to his claims did not fulfill the need for exhaustion on his claims in paragraphs 37 to 39. Thus, the Defendant's Motion for Summary Judgment is granted as to paragraphs 37 to 39.

**IT IS ORDERED** that the Defendant's Motion for Partial Summary Judgment is granted.

James O. Browning
UNITED STATES DISTRICT JUDGE

*Counsel:*

Jeffrey A. Dahl
Keleher & McLeod, P.A.
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Gregory J. Fouratt
  United States Attorney
John W. Zavitz
  Assistant United States Attorney
Dori Ellen Richards
  Special Assistant United States Attorney
Albuquerque, New Mexico

  *Attorneys for the Defendant*