# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOHN I. KING,

        Plaintiff,

vs.                                                               No. CIV 05-0575 JB/WDS
                                                          No. CIV 05-0997 JB/WDS

DIRK KEMPTHORNE, SECRETARY,
UNITED STATES DEPARTMENT OF
THE INTERIOR,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant United States' Motion for Partial Summary Judgment and Supporting Memorandum of Law, filed November 13, 2007 (Doc. 65)("Motion"). The Court held a hearing on February 27, 2008. The primary questions posed by this motion involve paragraphs 8-14 of the Amended Complaint, which allege that Laverne W. Collier, Plaintiff John King's supervisor, discriminated against King on the basis of race and created a hostile-work environment from April of 1997 through 2002, in violation of Title VII of the Civil Rights Act of 1964. The primary issues are: (i) whether King has exhausted his claims; (ii) whether King has presented a prima-facie case for hostile-work environment; and (iii) whether King has presented a prima-facie case of racial discrimination. Because the Court concludes that King has timely exhausted some, but not all, of his claims, that King has shown a prima-facie case for hostile work environment, and that King has shown a prima-facie case of race discrimination for some, but not all of his claims, the Court will grant in part and deny in part the Motion.

## FACTUAL BACKGROUND

King is a Native American employee of the Bureau of Indian Affairs in the United States

Department of the Interior ("the Department").  <u>See</u> First Amended Complaint of Discrimination and Retaliation in Federal Employment ¶ 1, at 1, filed March 21, 2006 (Doc. 25)("Amended Complaint"). King is a member of the Navajo tribe.  <u>See id.</u>  King brings this action to obtain relief and to redress alleged unlawful employment practices.  <u>See id.</u>

According to King, he has been employed at the Department since 1981.  In 1997, however, problems began while King was the Chief of Division Operations and Maintenance at the Office of Facilities Management and Construction ("OFMC") in Albuquerque, New Mexico.  <u>See id.</u> ¶¶ 7-9, at 2.  According to King,  Collier, his direct supervisor, began harassing and demeaning King, and also interfered with and undermined King's supervisory authority.  <u>See id.</u> ¶¶ 8-12, at 2-3.

As a result of Collier's actions, King filed an Equal Employment Opportunity ("EEO") complaint with the Department.  <u>See id.</u> ¶ 14, at 3.  After filing the EEO complaint, King alleges that the harassment and discrimination continued and that he was subjected to reprisals for filing a complaint, including having several of his travel-authorization requests denied.  <u>See id.</u> ¶¶ 15-20, at 3-4.   Following this latest round of incidents, King filed a second EEO complaint. <u>See id.</u> ¶ 21, at 4.

In June of 2003, Collier retired and Ken Ross became Acting Director of the OFMC.  Ross issued a memorandum that King alleges placed him on a performance improvement plan and leave restrictions without any notice or cause.  <u>See id.</u> ¶¶ 23-26, at 4-5.  According to King, Ross' actions continued the "pattern of retaliation and reprisal" that Collier started.  <u>Id.</u> ¶ 26, at 5.  King filed an EEO complaint in response to Ross' actions.   <u>See id.</u> ¶ 27, at 5.

In September of 2003, Boyd Robinson replaced Ross as the Acting Director of the OFMC.  King alleges that, while the supervisor changed, the retaliation and discrimination he faced stayed the same.  According to King, Robinson engaged in a number of retaliatory actions against him,

including making comments about his prior EEO complaints in a supervisory review, and ignoring or circumventing King in filling personnel vacancies for positions under King.  See id. ¶¶ 30-40, at 5-7.  King filed his fourth and final EEO complaint in response to Robinson's alleged acts of retaliation.  See id. ¶ 41, at 7.

The Equal Employment Opportunity Commission ("EEOC") ordered the Department to issue a Final Agency Decision regarding King's second complaint.  The Department did so, giving King 90 days from March 2, 2005 to file a lawsuit.  See id. ¶ 22, at 4.  The EEOC did not act on King's third complaint within 180 days of King's filing, which was on August 11, 2003.  See id. ¶¶ 27, 29, at 5.  King appealed his fourth complaint, and the appeal was dismissed on June 21, 2005.  See id. ¶ 41, at 7.

The specific facts at issue in this Motion are contained in paragraphs 8 to 14 of Plaintiff's Amended Complaint.  Those paragraphs state the following:

> 8.  In April 1997, Plaintiff became the subject of negative, demeaning and embarrassing comments that were made both within and without his presence by his immediate supervisor, Laverne W. Collier.

> 9.  Plaintiff was the only senior manager of Navajo origin who reported to Mr. Collier.  Plaintiff speaks his native language fluently and provides program presentations to Navajo clients in his native language for a better understanding of programs and related issues. Plaintiff also has a Bachelor's Degree in Civil Engineering and a Master's Degree in Business Administration.

> 10.  Between April of 1997 and October of 2001, Plaintiff's supervisor, Laverne Collier, overruled and directed Plaintiff's decisions regarding selection of personnel that were under Plaintiff's supervision.  Plaintiff's supervisor would go directly to staff members who worked under the Plaintiff, especially Navajo Staff members, in order to create fear, confusion and dissent against the Plaintiff.

> 11.  Plaintiff's supervisor reduced and/or undermined his supervisory authority by taking action to terminate, manage, discipline and

<blockquote>
reassign employees who were under Plaintiff's supervision, without Plaintiff's input for the period of time from April 1997 to October of 2001.

12.      Plaintiff's supervision discriminated against him by reducing the duties of his position, excluding him from meetings and other activities, withholding information necessary for Plaintiff to do his job and failing to support Plaintiff in policies and actions regarding employees whom Plaintiff supervised.

13.      Plaintiff's supervisor failed to provide the Plaintiff with annual evaluations of his performance.

14.      As a result of the above-referenced actions taken by Plaintiff's supervisor, Plaintiff filed an EEO Complaint with the United States Department of the Interior, which was assigned Case No. BIA-02-006.
</blockquote>

Amended Complaint ¶¶ 8-14, at 2-3.

King's first contact with an EEO counselor after his first complaint was September 28, 2001. See Exhibit A to Motion for Partial Summary Judgment, Complaint of Discrimination at 14 (Doc. 52-2)("DOI Complaint"). Forty-five days before September 28, 2001 was August 14, 2001. See Defendant United States' Motion for Partial Summary Judgment and Supporting Memorandum of Law at 13, filed November 13, 2007 (Doc. 65)("Motion").

## PROCEDURAL BACKGROUND

King brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e – 2000e-17, asserting that he was discriminated against on the basis of race and that he was retaliated against for engaging in protected activity. See Amended Complaint at 1. The Department brings this motion for partial summary judgment pursuant to rule 56 of the Federal Rules of Civil Procedure with respect to King's allegations in paragraphs 8 to 14. See Motion at 1. Specifically, the Defendant requests that the Court grant partial summary judgment on paragraphs 8 to 14 of King's complaint because (i) King failed to exhaust both discrete allegations of racial

discrimination and portions of his hostile-work-environment claims; (ii) King fails to adduce evidence to suggest or establish that King's race motivated any alleged harassment; (iii) King has not presented evidence that he was subjected to a steady barrage of racially offensive remarks or epithets that altered the terms and conditions of his employment; (iv) King improperly relies on hearsay statements, the subjective feelings of third parties, and his own speculative conclusions to suggest a racial animus by Collier towards individuals of Navajo origin, and to then establish his race-base claims.  See Motion at 9-10.

### LAW GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Rule 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The movant has "the initial burden to show that there is an absence of evidence to support the nonmoving party's case."  Mirzai v. State of N.M. Gen. Servs. Dep't, 506 F.Supp.2d 767, 774 (D.N.M. 2007)(Browning, J.)(internal quotations omitted).  That is, the moving party has the initial burden to demonstrate absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the movant meets that burden, then the burden shifts to the nonmovant "to present specific, admissible facts from which a rational trier of fact could find for the nonmovant."  Velasquez v. Frontier Med., Inc., 375 F.Supp.2d 1253, 1262 (D.N.M. 2005)(Browning J.).  The nonmovant must set forth specific facts and cannot rely only on his or her pleadings.  See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."  Id.

"For the purposes of summary judgment, the court assumes the evidence of the nonmoving

party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor." Velasquez v. Frontier Med., Inc., 375 F.Supp.2d at 1263 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  Summary judgment is appropriate if there is no genuine issue of material fact.  See Trujillo v. Bd. of Educ., Albuquerque Pub. Sch., 410 F.Supp.2d 1033, 1039 (D.N.M. 2005)(Browning, J.).  "An issue of fact is 'genuine' if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  "Essentially, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Velasquez v. Frontier Med., Inc., 375 F.Supp.2d at 1263 (internal quotations and citations omitted).

### LAW REGARDING TITLE VII EMPLOYMENT DISCRIMINATION CASES

Title VII of the Civil Rights Act of 1964 prohibits an employer from "fail[ing] or refus[ing] to hire or . . . discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

####     1.      Title VII and its Exhaustion Requirement.

A plaintiff generally must exhaust his or her administrative remedies before pursuing a Title VII claim in federal court. See Khader v. Aspin, 1 F.3d 968, 970 (10th Cir. 1993). Exhaustion of administrative remedies is central to Title VII's statutory scheme, because it provides the EEOC with the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and of promoting conciliatory efforts. See Patterson v. McLean Credit Union, 491 U.S. 164, 180-81 (1989); Williams v. Little Rock Mun. Water Works, 21 F.3d

218, 222 (8th Cir. 1994). "'[A]llowing a complaint to encompass allegations outside the ambit of

the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as

well as deprive the charged party of notice of the charge, as surely as would an initial failure to file

a timely EEOC charge.'" Welsh v. City of Shawnee, 182 F.3d 934, 935 (10th Cir. 1999)(quoting

Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 127 (7th Cir. 1989)).

     To exhaust administrative remedies, an individual claimant must: (i) first and timely file a

charge of discrimination with the EEOC setting forth the facts and nature of the charge; and (ii)

receive notice of the right to sue. See Simms v. Oklahoma ex rel. Dep't of Mental Health &

Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999); 42 U.S.C. §§ 2000e-5(b), (c), (e),

(f)(1). "[A] plaintiff normally may not bring a Title VII action based upon claims that were not part

of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter." Simms v.

Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d at 1321. Once an

individual receives notice of the right to sue, he or she has ninety days in which to file suit. See 42

U.S.C. § 2000e-5(f)(1).  "[A]llegations outside the body of the charge may be considered when it

is clear that the charging party intended the agency to investigate the allegations." Welsh v. City of

Shawnee, 182 F.3d at *5. See Rush v. McDonald's Corp., 966 F.2d 1104, 1110-11 (7th Cir.

1992)(noting the plaintiff's EEOC affidavit contained "explicit reference" to types of discrimination

alleged in the complaint); Box v. A & P Tea Co., 772 F.2d 1372, 1375 (7th Cir.1985)(noting that

handwritten addendum to typed charge of race discrimination, also suggesting sex discrimination,

was sufficient to permit a judicial claim).

     "Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title

VII." Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996)(quotation omitted). The filing of a

timely charge of discrimination with the EEOC is a jurisdictional prerequisite to the institution of

a lawsuit based on a claim of employment discrimination under Title VII. See Keller v. Prince George's County, 827 F.2d 952, 956 (4th Cir. 1987); Romero v. Union Pac. R.R., 615 F.2d 1303, 1303 (10th Cir. 1980). Without such a filing, federal courts lack subject-matter jurisdiction to entertain Title VII claims, and a rule 12(b)(1) motion to dismiss is procedurally proper. See Seymore v. Shawyer & Sons, Inc., 111 F.3d 794, 799 (10th Cir. 1997); Carmody v. SCI Colo. Funeral Servs., Inc., 76 F. Supp. 2d 1101, 1103-1104 (D. Colo.1999).

Before 2002, the Tenth Circuit recognized a limited exception to the "exhaustion rule for Title VII claims when the unexhausted claim is for discrimination like or reasonably related to the allegations of the EEOC charge." Simms v. Oklahoma ex. rel. Dep't of Mental Health and Substance Abuse Servs., 165 F.3d at 1327 (internal citations and quotations omitted). The Tenth Circuit "construed the reasonably related exception to include most retaliatory acts subsequent to an EEOC filing." Id. (citing Seymore v. Shawyer & Sons, Inc., 111 F.3d at 799). In Martinez v. Potter, 347 F.3d 1208 (2003), however, the Tenth Circuit noted that the "Supreme Court's pronouncement in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 . . . (2002), has effected fundamental changes to the doctrine allowing administratively unexhausted claims in Title VII actions." 347 F.3d at 1210. The Tenth Circuit stated:

> We agree with the government that such unexhausted claims involving discrete employment actions are no longer viable. Morgan abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with the teaching that each discrete incident of such treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted.

347 F.3d at 1209 (internal citations and quotations omitted).

"Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment

-8-

decision constitutes a separate actionable unlawful employment practice." National R.R. Passenger Corp. v. Morgan, 536 U.S. at 114 (internal citations and quotations omitted).  In National Railroad Passenger Corp. v. Morgan, this rule applied to bar a plaintiff from suing on claims for which no administrative remedy had been sought when those incidents complained of occurred more than 300 days before the filing of Plaintiff's EEO complaint.  See Martinez v. Potter, 347 F.3d at 1210.  "The rule is equally applicable, however, to discrete claims based on incidents occurring after the filing of Plaintiff's EEO complaint."  Id.  The Tenth Circuit has stated: "Our decisions have unambiguously recognized Morgan as rejecting application of the continuing violation theory." Martinez v. Potter, 347 F.3d at 1211 (internal quotations omitted).

Furthermore, under National Railroad Passenger Corp. v. Morgan, a series of events that constitute a hostile-environment claim are considered one unlawful action.  See West v. Norton, 376 F.Supp.2d 1105, 1129 (D.N.M. 2004)(Browning, J.).  "Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." National Railroad Passenger Corp. v. Morgan, 536 U.S. at 115 (internal citations and quotations omitted).  An "unlawful employment practice" that constitutes a hostile-work environment thus cannot be said to occur on any particular day, but rather occurs over a series of days or years. Id. (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)("As we pointed out in Meritor [ Savings Bank, FSB v. Vinson . . . mere utterance of an . . . epithet which engenders offensive feelings in a[n] employee . . . does not sufficiently affect the conditions of employment to implicate Title VII.")(internal quotations and citations omitted)).  Thus, so long as one of the incidents included within the claim of hostile environment occurred within the 45-day time limit provided for under 29 C.F.R. § 1614.105(a)(1), other conduct that occurred outside of the proscribed time period, but contributing to the hostile-work environment, is not time barred.  See National Railroad Passenger Corp. v. Morgan, 536 U.S.

at 115 (holding "that consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period[]"); West v. Norton, 376 F.Supp.2d at 1129.

      2.    **McDonnell-Douglas** <u>**Test.**</u>

At the summary judgment stage, the nonmoving party must come forth with some proof of discrimination, either by demonstrating direct evidence of the employer's discriminatory intent or by using circumstantial evidence that creates an inference of racial bias under the <u>McDonnell Douglas</u> framework. The plaintiff must show, from the materials submitted to the court in connection with the motion under the <u>McDonnell Douglas</u> framework, that one or more contradicted factual issues exist about the elements of the prima-facie case.

      a.    <u>**Direct Evidence.**</u>

"Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption." <u>Hall v. U.S. Dep't of Labor</u>, 476 F.3d 847, 855 (10th Cir. 2007). Moreover, "[d]irect evidence demonstrates on its face that the employment decision was reached for discriminatory reasons." <u>Danville v. Reg'l Lab Corp.</u>, 292 F.3d 1246, 1249 (10th Cir. 2002). "When a plaintiff alleges that discriminatory comments constitute direct evidence of discrimination, [the Tenth Circuit] has held that the plaintiff must demonstrate a nexus exists between the alleged discriminatory statements and the . . . decision to terminate [the employee]." <u>Negrete v. Maloof Distrib. L.L.C.</u>, No. CIV 06-0338 JB/LFG, Memorandum Opinion and Order at 39, filed November 28, 2007 (D.N.M.)(Browning, J.)(internal quotations omitted). "Direct evidence is that which demonstrates a specific link between the alleged discriminatory animus and the challenged [employment] decision, sufficient to support a finding by a reasonable fact finder that an illegitimate

criterion actually motivated [the employer's] decision to take the adverse employment action." Deneen v. Nw. Airlines, 132 F.3d 431, 436 (8th Cir. 1998).

### b.    **Indirect Evidence in the McDonnell Douglas Framework.**

A plaintiff may use direct evidence or indirect evidence, with a burden-shifting method, to establish a case under Title VII. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-803 (1973). "[C]laims of age, race, national origin, gender discrimination, and retaliation are all subject to the burden shifting framework that the Supreme Court established in McDonnell Douglas Corp. v. Green." Gamez v. Country Cottage Care and Rehab., 377 F.Supp.2d at 1119 (citing McDonnell Douglas Corp. v. Green, 411 U.S. at 802-804).   Under the McDonnell Douglas framework, a plaintiff must set forth a prima-facie case of discrimination.   See Kelly v. City of Albuquerque, 375 F.Supp.2d at 1210.   If the plaintiff establishes a prima-facie case for any of his discrimination claims, "the burden shifts to the defendant to come forward with a legitimate non[-]discriminatory reason for its employment related decision." McDonnell Douglas Corp. v. Green, 411 U.S. at 802. "Upon the employer's articulation of a legitimate, non[-]discriminatory reason . . . the presumption of discrimination established by the prima facie case simply drops out of the picture." Kelly v. City of Albuquerque, 375 F.Supp.2d at 1210 (internal quotations omitted).   The plaintiff then must present evidence that the defendant's proffered reason for the employment decision was pretextual. See id. (citing Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000)).

### 3.    **Prima-Facie Case of Disparate Treatment.**

In Martinez v. United States Department of Energy, 170 Fed.Appx. 517 (10th Cir. 2006), the Tenth Circuit explained:

> To prevail on a disparate treatment claim under Title VII of the Civil Rights Act, the employee must show the employer intentionally discriminated against him for a reason prohibited by the statute. If, as here, the employee relies on circumstantial

-11-

evidence, we apply the burden-shifting framework outlined in <u>McDonnell Douglas Corp. v. Green</u>.

170 Fed.Appx at 521 (internal citations and quotations omitted).  A plaintiff must demonstrate that:

(i) she is a member of a protected class; (ii) she suffered an adverse-employment action, and (iii)

similarly situated employees were treated differently.  <u>See</u> <u>Velasquez v. Frontier Med. Inc.</u>, 375

F.Supp.2d at 1271.  The Tenth Circuit liberally defines what constitutes an adverse-employment

action.  <u>See</u> <u>Sanchez v. Denver Public Schools</u>, 164 F.3d 527, 532 (10th Cir. 1998).  As the Tenth

Circuit has stated:

> Such actions are not simply limited to monetary losses in the form of wages or
> benefits.  Instead, we take a case-by-case approach; examining the unique factors
> relevant to the situation at hand.  Nevertheless, we will not consider a mere
> inconvenience or an alteration of job responsibilities to be an adverse employment
> action.

<u>Id.</u> (internal quotations and citations omitted).

### 4.    <u>Law on Claims for Hostile-Work Environment.</u>

"To establish a prima facie case of hostile work environment harassment, a plaintiff must

show that 'under the totality of circumstances [(i)] the harassment was pervasive or severe enough

to alter the terms, conditions, or privilege of employment, and [(ii)] the harassment was racial or

stemmed from racial animus.'" <u>Bloomer v. United Parcel Serv., Inc.</u>, 94 Fed.Appx. 820, 825 (10th

Cir. 2004)(quoting <u>Witt v. Roadway Express</u>, 136 F.3d 1424, 1432 (10th Cir. 1998).  <u>See</u> <u>Carter v.

Mineta</u>, 125 Fed.Appx. 231, 238 (10th Cir. 2005); <u>Mitchell v. City and County of Denver</u>, 112

Fed.Appx. at 671 ("Under § 1981, a prima facie case of racial harassment/hostile work environment

requires [a showing that] under the totality of circumstances [(i)] the harassment was pervasive or

severe enough to alter the terms, conditions, or privilege of employment, and [(ii)] the harassment

was racial or stemmed from racial animus.")(internal quotations omitted).  To establish a hostile-

work environment claim, "a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Davis v. United States Postal Serv., 142 F.3d 1334, 1341 (10th Cir.1998)(internal citations and quotations omitted). "A discriminatory and abusive environment must affect the employee's work environment so substantially as to make it intolerable for her to continue." Creamer v. Laidlaw Transit, Inc., 86 F.3d 167, 170 (10th Cir.1996)(holding that a work environment did not contain "pervasive" harassment when the plaintiff made general allegations of frequent "sexual slurs" and the only specific incident cited to involved a co-worker grabbing the plaintiff).

"The mere utterance of a statement which  'engenders offensive feelings in an employee' would not affect the conditions of employment to a sufficient[ly] significant degree to violate Title VII.'" Gross v. Burggraf Construction Co., 53 F.3d 1531, 1537 (10th Cir.1995)(quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)(alteration in the original)).  To survive summary judgment, a plaintiff must demonstrate more than "'a few isolated incidents of racial enmity' or 'sporadic racial slurs.'"  Chavez v. New Mexico, 397 F.3d 826, 832 (10th Cir. 2005)(quoting Bolden v. PRC, Inc., 43 F.3d 545, 551 (10th Cir. 1994)(internal citation omitted)).  "Instead, 'there must be a steady barrage of opprobrious racial comments.  Chavez v. Mexico, 397 F.3d at 832 (quoting Bolden v. PRC, Inc., 43 F.3d at 551).

The Tenth Circuit has stated  that "[p]ervasiveness and severity are independent and equal grounds" upon which a plaintiff may establish this element of a hostile environment claim. Witt v. Roadway Express, 136 F.3d 1424, 1432 (10th Cir. 1998) (addressing a hostile environment claim under 42 U.S.C. § 1981); see also Aramburu v. Boeing Co., 112 F.3d 1398, 1410 (10th Cir. 1997) (citing Durham v. Xerox Corp., 18 F.3d 836, 838-39 (10th Cir. 1994), for the proposition that

"standards and burdens under § 1981 are the same as those under Title VII ").  Moreover, the plaintiff must demonstrate that the work environment was objectively and subjectively offensive, but need "not demonstrate psychological harm, nor is she required to show that her work suffered as a result of the harassment." Walker v. United Parcel Service of Am., 76 Fed.Appx. 881, 885 (10th Cir. 2003). In addition to all the circumstances, relevant considerations to determine if an environment is objectively hostile include: "[T]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. at 787-88 (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993))(internal citations and quotations omitted).

## ANALYSIS

The Defendant's Motion presents several questions to the Court.  King's allegations in paragraphs 8 through 14 of the Amended Complaint relate to employment-discrimination claims premised on both race-discrimination and hostile-work-environment theories.  The Defendant challenges that some of these claims are unsuccessful because King failed to exhaust his administrative remedies with respect to certain incidents, while all of the claims fail because of an inability to carry his burdens under the McDonnell Douglas framework.  King has failed to exhaust many of the incidents underlying his claim of race discrimination.  He has, however, properly exhausted his hostile-work-environment claim.   The Court also concludes that King has demonstrated a prima-facie case of hostile-work environment. Several of the incidents of race discrimination that King has properly exhausted will support a claim of race discrimination, but others will not.

**I.      KING HAS EXHAUSTED SOME, BUT NOT ALL, OF HIS CLAIMS.**

A plaintiff generally must exhaust his or her administrative remedies before pursuing a Title VII claim in federal court.  See Khader v. Aspin, 1 F.3d at 970.  King has exhausted the incidents underlying his claim of hostile-work environment under Title VII.  Some of the incidents in his discrimination claim have been exhausted, but others have not been, and the Court must dismiss them.

Exhaustion of administrative remedies is central to Title VII's statutory scheme, because it provides the EEOC with the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and of promoting conciliatory efforts.  See Patterson v. McLean Credit Union, 491 U.S. at 180-81; Williams v. Little Rock Mun. Water Works, 21 F.3d at 222.  "'[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge.'"  Welsh v. City of Shawnee, 182 F.3d at 935 (quoting Schnellbaecher v. Baskin Clothing Co., 887 F.2d at 127).  The administrative process is governed by regulations that the EEOC has promulgated.  See 29 C.F.R. § 1614.  Pre-complaint or informal counseling is the first step in that process, requiring the aggrieved federal employee to consult with an agency counselor "within 45 days of the date of the matter alleged to be discriminatory, or in the case of a personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1).

**A.      KING HAS EXHAUSTED HIS HOSTILE-WORK-ENVIRONMENT CLAIM.**

The Supreme Court and Tenth Circuit have rejected the continuing-violation theory, which allowed a plaintiff to retain otherwise time-barred claims by demonstrating they were appropriately related to claims that had been timely exhausted.  See Martinez v. Potter, 347 F.3d at 1211 (internal

quotations omitted).  Hostile-work-environment claims involve continuing or repeated conduct by their very nature, and so can still involve time-barred conduct.  See National Railroad Passenger Corp. v. Morgan, 536 U.S. at 115 (holding "that consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period[]").  Each claim of race discrimination based on discrete incidents, however, must be properly and individually exhausted.

For King to be able to bring in incidents from before the limitations period for his hostile-work-environment claim, those incidents must be part of the same hostile-work environment.  See Tademy v. Union Pacific Corp. , 520 F.3d 1149, 1156 (10th Cir. 2008).  Acts are part of the same hostile-work environment if they are sufficiently related. See id.  Determining if acts are sufficiently related involves looking at "the type of these acts, the frequency of the acts, and the perpetrator of the acts."  Id. (internal quotation marks and citation omitted).  All the incidents that King alleges involve a single perpetrator: his supervisor Collier.  King alleges dozens of incidents in his DOI Complaint over the course of approximately five years.  Finally, all the incidents alleged involve Collier either undermining King's authority, making conceivably racist comments, or occasionally intimidating or harassing him.  Accordingly, the Court concludes that all the incidents King alleges in his DOI Complaint are part of the same hostile-work environment.  Because several related events occurred within the limitations period, all the incidents underlying the hostile-work environment claim have been timely exhausted.

The Defendant argues that several incidents occurring outside the limitations period are not sufficiently related to those occurring during the limitations period, and are time-barred.  See Motion at 15.  This argument entails too cramped a reading of National Railroad Passenger Corp. v. Morgan.

National Railroad Passenger Corp. v. Morgan states "that consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." 536 U.S. at 115.  The Supreme Court did not say that the hostile-work environment is characterized based on those events in the limitations period, from which a court should then see what other events related to those incidents in the limitations period.  Rather, the Supreme Court held that a court should see if "an act contributing to that hostile environment takes place within the statutory time period." Id.  This phrasing indicates that a court should first characterize the hostile-work environment, and then see if any incident contributing to that environment occurred within the statutory period.  A court should not compare the incidents inside the limitations period with those outside the limitations period, but rather compare both sets of incidents with the hostile-work environment itself.  This also makes intuitive sense – an abusive employer should not be able to escape liability because it was creative and engaged in a variety of hostile behaviors.[1]

### B.   KING HAS EXHAUSTED SOME OF THE INCIDENTS SUPPORTING HIS RACE DISCRIMINATION CLAIM.

The acts that King alleges in support of his race discrimination are all discrete acts.  For example, King's allegations that Collier discriminated against him by teasing him about his corner office in 1998, or by overruling his choice for a supply technician position in 2000, are both discrete acts.  See King v. Kempthorne, 2008 WL 4104130, *13 (D.N.M.)(Browning, J.)(failing to respond to email was a discrete act of retaliation that must be exhausted).  King first met with an EEOC

---

[1] King also asserts a hostile-work-environment claim under 42 U.S.C. § 1981.  See Amended Complaint ¶ 43, at 7.  Section 1981 claims do not need to be administratively exhausted.  See Denetclaw v. Thoutt Brothers Concrete Contractors, Inc., 2008 WL 2503649, *2 (10th Cir. 2008).

counselor on September 28, 2001.  See DOI Complaint at 14.  Forty-five days before September 28, 2001 was August 14, 2001.  Accordingly, any claims of race discrimination cannot be based on conduct that occurred before August 14, 2001, as those claims have not been exhausted in a timely fashion.

Specifically, the following incidents included in the DOI Complaint have been properly exhausted and survive: (i) 8/27/2001 - Collier did not select King's recommended candidate and canceled a vacancy announcement; (ii) 8/30/2001 - Collier did not respond to King's second request for explanation regarding Collier's "relinquishment" of King's duties; (iii) 9/4/2001 - Collier sent an email advising that another employee, in lieu of King, was the primary contact for the OFMC personnel matters; (iv) 9/4/2001 - Collier reassigned IT staff from the Division of O&M, who were under the King's supervision, which allegedly contradicted the proposed OFMC reorganization plan created by the BIA Assistant Secretary; (v) 9/17/2001 - Collier did not act on King's written justification for filling Facility Management Information Systems project positions, which Collier had previously directed King to provide to him; (vi) 9/18/2001 - Collier detailed one of King's division staff members to the equipment warehouse without consulting King; (vii)  9/18/2001 - Collier detailed an employee to perform some activities, which were under King's direct supervision,  without consulting King and instructing the employee to report to Collier and not to King; and (viii) 9/24/2001 - Collier posted King's hostile-work-environment memorandum, submitted to the Deputy Commissioner, on the door of his office for others to read.  See DOI Complaint at 2-3.

## II.  KING HAS SHOWN A PRIMA-FACIE CASE OF HOSTILE-WORK-ENVIRONMENT.

"To establish a prima facie case of hostile work environment harassment, a plaintiff must

show that 'under the totality of circumstances [(i)] the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and [(ii)] the harassment was racial or stemmed from racial animus.'" <u>Bloomer v. United Parcel Serv., Inc.</u>, 94 Fed.Appx. at 825 (quoting <u>Witt v. Roadway Express</u>, 136 F.3d at 1432).  King is able to establish both elements of a prima-facie claim.  There is a genuine factual dispute whether the alleged harassment was racially motivated that cannot be resolved on summary judgment.  Additionally, King's evidence demonstrates harassment severe or pervasive enough that a reasonable jury could find that it altered the terms, conditions, or privileges of King's employment.

King demonstrates, based primarily on his affidavit, several different incidents from which a rational jury could infer that Collier had a racial animus towards Navajo Native Americans.  <u>See</u> Response at 2.  King identifies several incidents where Collier mentioned Navajos in a potentially negative context.  Specifically, King alleges that: (i) Collier asked if a prospective hire was Navajo; (ii) King heard Collier say that certain people would be qualified for jobs as long as they were not Navajo; (iii) King heard Collier criticize Young Jeff Tom – who was a representative of one of OFMC's clients and a Navajo Council member – saying that Young Jeff Tom was "whining and crying again;" (iv) Eileen Sage told King that Collier had said that Navajos are not as aggressive as Plains Indians; (v) Collier questioned whether King was hiring employees because they were Navajo; and (vi) Collier commented that King was giving Navajos all the money from a telecommunications project.  <u>See</u> Response ¶¶ 1-6, at 2 (citing affidavit and deposition).  King states that he heard Collier say that it was acceptable to recruit for an engineering position as long as the prospective employee was not Navajo.  <u>See</u> Exhibit A to Response, Affidavit of John I. King ¶ 16, at 4-5, executed January 22, 2008 (Doc. 76-2)("King Aff.").  On another occasion, King states that Collier questioned whether King was selecting employees because they were Navajo.  <u>See</u> <u>id.</u> ¶ 18,

at 5.  These incidents and several others to which King points could allow a rational jury to reach

the conclusion that Collier had an anti-Navajo racial bias or animus.

King also demonstrates that his work environment was full of harassment that  was

"pervasive or severe enough to alter the terms, conditions, or privileges of employment."  Bloomer

v. United Parcel Serv., Inc., 94 Fed.Appx. at 825 (quoting Witt v. Roadway Express, 136 F.3d at

1432).  King identifies several incidents where Collier mentioned Navajos in a potentially negative

context.  King adduces evidence that on a number of occasions Collier ignored his suggestions for

filling certain jobs or otherwise interfered with King's supervisory authority.  Although not overtly

racial, these actions can be considered part of a hostile-work environment, because while the

incidents may be race-neutral when viewed in isolation, when considered within a broader context

that includes anti-Navajo comments, a jury could find them to be racially motivated.  See Chavez

v. New Mexico, 397 F.3d at 833.  King alleges dozens of incidents over five years, ranging from

Collier bursting into King's office demanding to know why King was not in a meeting and placing

King in fear of his safety, see DOI Complaint at 4, to telling King he should look for a job

elsewhere, see id. at  5, to terminating a temporary employee of King's without consulting him, see

id. at 8, to asking King if he was having an affair with an employee King selected for a vacancy, see

id. at 11.  These incidents, combined with the potentially anti-Navajo comments, are sufficiently

pervasive that a jury could find that they constituted a hostile-work environment, especially as "the

severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is

quintessentially a question of fact."  Herrera v. Lufkin Industries, Inc., 474 F.3d 675, 680 (10th Cir.

2007)(quoting McCowan v. All Star Maintenance, Inc., 273 F.3d 917, 923 (10th Cir. 2001).

### III.    KING HAS MADE A PRIMA-FACIE CLAIM OF RACE DISCRIMINATION.

The final question is whether the claims King has exhausted are sufficient to demonstrate

a prima-facie case of race discrimination.  King must demonstrate that: (i) he is a member of a protected class; (ii) he suffered an adverse employment action, and (iii) similarly situated employees were treated differently.  See Velasquez v. Frontier Med. Inc., 375 F.Supp.2d at 1271.  The Defendant argues that none of the incidents King alleges are adverse employment actions.  The Court concludes that King has demonstrated a prima-facie case based on some of the exhausted acts, but other exhausted acts are not adverse employment actions and cannot support a claim of race discrimination.

Most of the ten discrete acts that King has properly exhausted are allegations that Collier undermined his authority.  Not all of these actions, however, are adverse-employment actions.  They may have been irritating to King, but they are not all actionable claims.  While the Tenth Circuit liberally construes the phrase "adverse employment action," a "mere inconvenience or alteration of job responsibilities" is not an adverse employment action.  Sanchez v. Denver Public Schools, 164 F.3d at 532.

Several of the allegations King makes are sufficiently severe that a jury could find them to be adverse employment actions.  Specifically, four actions rise to this level: (i) Collier sending an e-mail that made another employee the primary contact for personnel matters; (ii) Collier reassigning IT staff from under King; (iii) Collier detailing one of King's staff members without consulting King; and (iv) detailing another employee to perform duties under King's supervision.  Such actions could significantly interfere with King performing his duties and a jury could find them to be adverse employment actions.

The one discrete act that does not fall within this pattern is Collier's posting of a hostile-work-environment memorandum that King had sent to the Deputy Commissioner on King's door.  The Defendant admits that this event occurred.  See Motion at 44.  Such an action was certainly

reprehensible, but King presents no evidence that it had any impact on his employment conditions. King does not make any reference to this memorandum in his response.  It is not the Court's place to speculate on what effect the posting may have had; without evidence that it had some sort of effect, the Court must conclude that the posting was not an adverse employment action.  Once the Defendant has challenged King's case, it is King's burden to show a genuine issue of material fact on the three elements of a prima-facie case under McDonnell-Douglas.

**IT IS ORDERED** that the Defendant United States' Motion for Partial Summary Judgment is granted in part and denied in part.  The motion is granted with respect to the Plaintiff's claims of race discrimination arising from incidents occurring before August 14, 2001.  The motion is denied with respect to the Plaintiff's hostile-work environment claim. The motion is denied with respect to claims of race discrimination based on the following incidents: (i) Collier sending an e-mail that made another employee the primary contact for personnel matters; (ii) Collier reassigning IT staff from under King; (iii) Collier detailing one of King's staff members without consulting King; and (iv) detailing another employee to perform duties under King's supervision.  The motion is granted with respect to all other claims of race discrimination arising from incidents occurring after August 14, 2001.

_____
UNITED STATES DISTRICT JUDGE

*Counsel and parties:*

Jeffrey A. Dahl
Keleher & McLeod, P.A.
Albuquerque, New Mexico

   *Attorney for the Plaintiff*

-22-

Gregory J. Fouratt
  United States Attorney
Michael H. Hoses
  Assistant United States Attorney
John W. Zavitz
  Assistant United States Attorney
Dori Ellen Richards
  Special Assistant United States Attorney
Albuquerque, New Mexico

  *Attorneys for the Defendant*

Jack Rever

  *Defendant pro se*