# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOHN I. KING,

       Plaintiff,

vs.                                  No. CIV 05-0575 JB/WDS
                                          No. CIV 05-0997 JB/WDS

DIRK KEMPTHORNE, SECRETARY,
UNITED STATES DEPARTMENT OF
THE INTERIOR,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion for Partial Summary Judgment on Claims Against Ross  (Complaint ¶¶ 23-29) and Supporting Memorandum of Law, filed November 28, 2007 (Doc. 70)("Motion").  The Court held a hearing on February 27, 2008. The primary issues are: (i) whether Plaintiff John King has suffered a materially adverse employment action; and (ii) whether the reasons the Defendant offers are pretextual.  Because the Court finds that one of the incidents alleged by King was not an adverse employment action, while the Defendant has provided a legitimate explanation for the other incident without sufficient rebuttal by King, the Court will grant the motion.

## BACKGROUND

This case arises out of King's employment with the Bureau of Indian Affairs in the United States Department of the Interior.  King alleges that he suffered numerous acts of harassment and discrimination because he was a Navajo, leading him to file complaints with the Department of the Interior.  As a result of these complaints, King alleges, his supervisors took a number of retaliatory

actions against him, and continued to harass him and discriminate against him. The facts of the case have already been laid out in detail elsewhere. <u>See</u> Memorandum Opinion and Order at 1-3, filed March 31, 2008 (Doc. 97); Memorandum Opinion and Order at 1-4, filed September 30, 2008 (Doc. 115).

As relevant here, King alleges that, on June 6, 2003, Ken Ross, the Acting Director of the Office of Facilities Management and Construction ("OFMC"), and King's supervisor, issued an Adverse Action Memorandum ("June Memorandum") which placed King "on a Performance Improvement Plan and Leave Notice Restriction Notification without prior notice, just cause and due process." First Amended Complaint of Discrimination and Retaliation in Federal Employment ¶ 23, at 4, filed March 21, 2006 (Doc. 25)("Amended Complaint"). King argues that the June Memorandum was at odds with his history of recognition for outstanding work and was a retaliatory action by Ross.

The Defendant notes that the June Memorandum had no independent effect, as it referenced only previously imposed restrictions. <u>See</u> Motion at 11; Exhibit B to Motion, Memorandum to John King, dated June 6, 2003 (Doc. 70-3)("June Memorandum"). Apparently, however, King had never received the memorandum imposing those prior restrictions. As a result, Ross rescinded the performance improvement plan for lack of notice. <u>See</u> Exhibit I to Motion, Memorandum to John King at 2, dated July 14, 2003 (Doc. 70-10)("July Memorandum"). The July Memorandum, however, imposed leave restrictions on King. <u>See id.</u> at 4.

## ANALYSIS

To establish a prima-facie case of retaliation, a plaintiff must allege: (i) that he initiated a Title VII claim or engaged in other protected activity, (ii) that he  suffered a contemporaneous materially adverse employment action, and (iii) that there exists a causal connection between the

Title VII action and the materially adverse employment action.  See Chavez v. New Mexico, 397 F.3d 826, 838 (10th Cir. 2005).  Once a plaintiff alleges all three elements of retaliation, the burden shifts to the defendant to assert legitimate, non-retaliatory reasons for each of the alleged acts. If the defendant offers legitimate non-retaliatory reasons for each of the alleged acts, the burden shifts back to the plaintiff to demonstrate why the defendant's proffered reasons are unworthy of belief. See Annett v. University of Kansas, 371 F.3d 1233, 1237 (10th Cir. 2004).

The parties agree that King engaged in protected activity by submitting a complaint to the Department of the Interior, so the first prong is met.  See Plaintiff's Response to Motion for Partial Summary Judgment and Supporting Memorandum of Law at 4, filed January 22, 2008 (Doc. 78)("Response").  As to the second prong, a materially adverse action is an action that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).

The June Memorandum was not an adverse action.  Although King contends that whether the June Memorandum had any independent effect is disputed – citing to Ross' allegedly contradictory deposition testimony, see Response at 4 – the June Memorandum is clear on its face. The June Memorandum requires King only to provide an explanation for several early departures from work on three days in early June.  See June Memorandum.  By its terms, it does not impose any other requirements, but only references previous requirements.  The July Memorandum cleared up any ambiguity about the June Memorandum having any independent effect.  There is nothing in Ross' deposition – the only evidence to which King points – to contradict this reading of the June Memorandum.  Ultimately, then, the only effect the June Memorandum can be said to have had is to have required King to explain his early departures from work.  Such a relatively minor imposition is not a materially adverse action under Title VII and under Burlington Northern and Santa Fe Ry.

<u>Co. v. White</u>.

The July Memorandum had an effect: it imposed leave restrictions on King.  The Defendant contends, however, that King has abandoned any claim arising from the July Memorandum by not mentioning it in his Amended Complaint or, alternatively, that the Defendant has a non-discriminatory explanation for the restrictions that King has not refuted.  <u>See</u> Motion at 13-15.  King argues that the July Memorandum claim was not abandoned because it can be inferred from the paragraph of the Amended Complaint regarding the June Memorandum.  The Court agrees with King.  A plaintiff's pleadings should be liberally construed when determining whether a claim has been abandoned or not.  The July Memorandum is directly related to the June Memorandum. It clarifies and expands upon the June Memorandum, and both relate to the same underlying issue whether leave restrictions or a performance improvement plan had been imposed on King.  The Amended Complaint sufficiently pled facts to put the Defendant on notice, and so the Court will not deem King to have abandoned the claim.

The Court will, however, grant summary judgment on the claim because King has not pointed to specific facts to rebut the non-discriminatory reason for the July Memorandum that the Defendant has proffered.  To meet his burden of production on rebuttal to survive summary judgment, King need only present evidence upon which "a reasonable jury could conclude that the proffered nondiscriminatory reason for the employment action is pretextual, that is, 'unworthy of belief.'" <u>Hardy v. S.F. Phosphates Ltd. Co.</u>, 185 F.3d 1076, 1080 (10th Cir. 1999)(citation omitted).  He "need not present direct evidence of illegal discriminatory animus to survive summary judgment." <u>Id.</u> (citation omitted).  On the other hand, while the "'burden is not onerous . . . it is also not empty or perfunctory.'" <u>Id.</u> (citations omitted; ellipsis in original).

The July Memorandum explains that Ross was imposing leave restrictions because of King

-4-

being absent from the office without explanation and a lack of professionalism in dealing with his timekeeping.  <u>See</u> July Memorandum at 3.  The July Memorandum also rescinded the performance improvement plan on which Collier had attempted to place King.  <u>Id.</u> at 2.  In his deposition, Ross also stated that he was imposing the leave restrictions because of unexplained absences and what Ross thought was an abuse of the leave policy.  <u>See</u> Exhibit A to Motion, Deposition of Ken Ross at 22:15-23, 56:4-24, taken February 7, 2007 (Doc. 70-2).

In an effort to rebut Ross' stated reasons for imposing the restrictions, King appears to make two arguments.  First, Ross allegedly reinstated the basic elements of the restrictions that Laverne Collier imposed.  Second, Ross allegedly did not treat any other employee the way King was treated. <u>See</u> Response at 6.  Neither of these facts are sufficient to persuade a rational jury that Ross' proffered explanations were mere pretext.

King's first argument fails because he does not say why this reinstatement would demonstrate that Ross' reasons were pretextual.  Ross stated that he independently considered King's conduct and decided to impose leave restrictions of his own.  He also rescinded Collier's decision to impose a performance improvement plan on King.  King points to no evidence to the contrary.  King's contention seems to amount to the circular argument that, because Ross imposed restrictions, his reasons must be retaliatory, because Ross would not have imposed restrictions if he was not retaliating.  That argument will not suffice.  The leave restrictions Ross imposed were not so harsh that they would effectively be retaliation law's version of res ipsa loquitur.  The restrictions were a minor burden, lasting only for two weeks, and Ross offered a credible justification for them. King has not introduced evidence showing that there is a genuine issue of material fact regarding the reasons that Ross has provided.

King's second argument also fails.  Being the only employee under leave restrictions is not

enough.  He does not adduce any evidence showing that other employees were treated differently

for conduct similar to King's.  See Metzler v. Federal Home Loan Bank of Topeka, 464 F.3d 1164,

1175 (10th Cir. 2006)(providing evidence that plaintiff "'was treated differently from similarly-

situated employees who violated work rules of comparable seriousness'" can show pretext)(citation

omitted).  For instance, he does not show that any other employee was absent without explanation

from work without receiving leave restrictions as a result.  He also does not point to any evidence

indicating that Ross' actions in issuing the July Memorandum violated any office policy or

procedures, written or informal.  In short, while it is undisputed that King was the only employee

placed on leave restrictions, King does not identify any evidence that makes this fact significant to

showing pretext.  Some employee has to be the first for some employment action.  Ross' explanation

is a legitimate and credible one, and the evidence to which King points does not sufficiently

challenge it so that a rational jury could find the explanation to be implausible.

Finally, the Defendant argues that King has abandoned any claim against Ross based on

racial discrimination, and that any such claim is unsupported.  See Motion at 15-16.  It is not clear

from the Amended Complaint whether King is making any such claim, and his Response does not

address the Motion on this point.  By not contesting the issue, the Court could deem King to have

waived any claim of race discrimination he may be asserting against Ross.  See Muhlberg v. Sprint

Corp., 2008 WL 631257, *3 (D.Kan. 2008)(failing to address a particular claim on summary

judgment waived claim).  Cf. D.N.M.LR-Civ. 7.6(b) (failing to file and serve a response to motion

deemed consent to grant the motion).   The Court need not hold the claim procedurally defaulted,

however, because it cannot see any sound basis in the Amended Complaint or in the record for such

a claim.  King's failure to discuss racial discrimination means that he has not attempted to show a

prima-facie case and that he has not presented any evidence that the Defendant's legitimate, non-

discriminatory reasons for Ross' actions were a pretext.  Thus, he has made no effort to satisfy his

burden under <u>McDonnell-Douglas</u>.  Moreover, even if the Court goes back to the Complaint to see

what King is alleging,  King's Amended Complaint does not mention any allegations of Ross

discriminating against King on the basis of race.  There are no claims that Ross ever made any

negative comments about Navajos.  The Amended Complaint states that Ross "was continuing the

pattern of retaliation and reprisal" begun by Collier, but does not accuse him of race discrimination.

Amended Complaint ¶ 26, at 5.  Accordingly, to the extent that the Amended Complaint does raise

any claims against Ross for racial discrimination, the Court will dismiss the claims.

    **IT IS ORDERED** that the  Defendant's Motion for Partial Summary Judgment on Claims

Against Ross  (Complaint ¶¶ 23-29) and Supporting Memorandum of Law is granted.


                              _____

                              UNITED STATES DISTRICT JUDGE

*Counsel and parties*:

Jeffrey A. Dahl
Keleher & McLeod, P.A.
Albuquerque, New Mexico

      *Attorney for the Plaintiff*

Gregory J. Fouratt
  United States Attorney
Michael H. Hoses
  Assistant United States Attorney
John W. Zavitz
  Assistant United States Attorney
Dori Ellen Richards
  Special Assistant United States Attorney
Albuquerque, New Mexico

      *Attorneys for the Defendant*

Jack Rever

 *Defendant pro se*