# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JOHN I. KING,

        Plaintiff,

vs.
                                   No. CIV 05-0575 JB/WDS
                                   No. CIV 05-0997 JB/WDS

KENNETH L. SALAZAR, SECRETARY,
UNITED STATES DEPARTMENT OF
THE INTERIOR,[1]

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion for Summary Judgment on Claims Against Rever in Second Amended Complaint (Doc. 109, ¶¶ 2,) [sic] and Hostile Work Environment Claims and Supporting Memorandum of Law, filed September 11, 2008 (Doc. 110)("Motion")(footnote omitted). The Court held a hearing on November 7, 2008. The primary issues are: (i) whether Plaintiff John I. King has abandoned his hostile work-environment claims involving Laverne W. Collier; (ii) whether there is sufficient evidence that Jack Rever retaliated against King for engaging in protected activities; (iii) whether there is sufficient evidence that Rever created a hostile work environment for King; (iv) whether there is sufficient evidence that King was constructively discharged; and (v) whether King has pled claims for race discrimination and

---

[1] The Defendant requested that Jack Rever be removed from the caption of the case, asserting that he is not a proper party to this action. In an action arising out of federal employment, "the head of the department, agency, or unit, as appropriate, shall be the defendant." 42 U.S.C. § 2000e-16(c). King has stated that the addition of Rever as a Defendant was an oversight. The Court has therefore deleted Rever's name from the caption of this case. Furthermore, on January 20, 2009, the Senate confirmed Kenneth L. Salazar's nomination as Secretary of the Interior. Salazar is thus automatically substituted as Defendant under rule 25(d) of the Federal Rules of Civil Procedure.

declaratory relief directed at Rever's actions.  The Court concludes that King has not abandoned his previous hostile work-environment claim.  The Court also holds that King's new claims involving Rever do not survive the motion for summary judgment.  Finally, the Court concludes that Counts I and III of the Second Amended Complaint do not state causes of action regarding Rever's conduct, but will not dismiss either Count.

## FACTUAL BACKGROUND

This case arises out of King's employment with the Bureau of Indian Affairs in the United States Department of the Interior.  King alleges that he suffered numerous acts of harassment and discrimination because he was a Navajo, leading him to file complaints with the Department of the Interior ("DOI") and the Equal Employment Opportunity Commission.  As a result of these complaints, King alleges, his supervisors took a number of retaliatory actions against him, and continued to harass him and discriminate against him, ultimately forcing him to resign.  The Court has laid out many of the case's background facts in detail elsewhere.  See Memorandum Opinion and Order at 1-3, filed March  31, 2008 (Doc. 97); Memorandum Opinion and Order at 1-4, filed September 30, 2008 (Doc. 115).  This motion concerns King's allegations involving his most recent supervisor, Rever.

Many of the relevant facts are undisputed.  Rever is the head of the Office of Facilities, Environmental, and Cultural Resources ("OFECR") at the DOI, and in January 2007, the Office of the Assistant Secretary for Indian Affairs decided that OFECR should begin managing leased facilities across Indian Country.  See Motion ¶¶ 1-2, at 4.  Rever determined that these new responsibilities should be run directly through his office, and after a discussion with King's then-direct supervisor, Boyd Robinson, Rever anticipated making King the new chief for the leased-facilities management program.  See id. ¶¶ 3-5, at 4-5.  Starting January 2007, King retained his

position in the Office of Facilities Management and Construction ("OFMC"), but added leased-facilities management to his duties.  See id. ¶ 7, at 5.

King states that he made several inquiries regarding the availability of resources for the new program.  See Exhibit A to Response, Affidavit of John I. King in Support of Response to Defendant's Motion for Summary Judgment on Claims of Retaliation, Hostile Work Environment, and Constructive Discharge Involving Rever ¶ 10, at 2 (executed October 7, 2008)(Doc. 120-2)("King Aff.").  He maintains that he was never given written authority for his new assignment, was never told of the budget he would have available or given permanent employees to supervise, never received a standard SF-50 form for the assignment, and never received responses to documents he prepared for Rever's signature regarding the new assignment and budget commitments.  See id. ¶¶ 11-13, at 2.  In sum, King states that his new task came with new responsibilities but without resources.  The Defendant, however, notes that, as a new office, the leased-facilities project was not supposed to have a direct budget or structure, and that Rever was to determine the final organization and responsibilities of the office.  See Motion ¶ 6, at 5.

King maintains that his new responsibilities were retaliation for past protected activity.  On August 24, 2007, he met with an Equal Employment Opportunity ("EEO") counselor for an initial interview.  See id. ¶ 8, at 5.  After the meeting, the counselor sent an e-mail to Rever about the meeting, notifying him that a complaint was being made against him.  See Plaintiff's Response to Defendant's Motion for Summary Judgment on Claims of Retaliation, Hostile Work Environment, and Constructive Discharge Involving Rever ¶ 8, at 4, filed October 7, 2008 (Doc. 120)("Response").  The Defendant contends, however, that the counselor notified Rever only generally of the complaint and did not identify the complaining party.  See Exhibit 2 to Reply, Electronic Mail from Debbie Ross to John Rever (dated August 24, 2007)(Doc. 124-3).  On August

27, 2007, King sent an e-mail to Debbie Clark, Rever's supervisor, notifying her that he had filed a complaint against Rever.  See King Aff. ¶ 16, at 3.

King states that, on September 5, 2007, he sent a request to Rever seeking approval to travel to a training, but that Rever requested additional documentation before approval.  See id. ¶¶ 17-18, at 3.  King states that neither Rever nor any other supervisor had ever requested additional documentation for training-related travel.  See id. ¶ 18, at 3.

On September 13, 2007, Rever issued a memorandum placing King on temporary detail for seventy days in Reston, Virginia and directed King to report directly to him.  See Motion ¶ 9, at 5. King believes that Rever detailed him to Reston to keep an eye on him.  After receiving the official reassignment, King contacted Clark, stating that his babysitting duties made a lengthy detail burdensome and requesting that he be allowed to work from Albuquerque, New Mexico.  See King Aff. ¶ 2; Exhibit E to Response, Electronic Mail from John I. King to Debbie Clark (dated September 13, 2007)(Doc. 120-2).  King states that he was never given an explanation why he had to travel to Reston.  See King Aff. ¶ 17, at 6.

King sent a memorandum to Rever, advising him that King would not report to Reston.  See Motion ¶ 10, at 5-6.  Rever sent an e-mail ordering King again to report to Reston by September 24, 2007, but King continued to report to work in Albuquerque instead.  See id. ¶ 12, at 6.  On September 28, 2007, Rever sent a memorandum to King, informing him that he was being placed on absent-without-leave status.  See id. ¶ 13, at 6.  King contacted Rever on September 28, 2007, again refusing to report to Reston.  See id. ¶ 14, at 6.

On October 2, 2007, Rever notified King through another memorandum that King was "engaging in 'blatant acts of insubordination,'" and ordered King to contact him by close of business on October 4, 2007 or have employment privileges revoked and personnel action taken against him.

-4-

See id. ¶ 15, at 6 (quoting Exhibit 9 to Motion, Memorandum from Rever to John I. King at 2 (dated October 2, 2007)(Doc. 110-10)("October 2 Memo.")).   King notes that Rever's October 2, 2007 memorandum also directs King that he is no longer assigned to OFMC and should refrain from work in that position.   See October 2 Memo. at 2.   King does not recall attempting to contact Rever after the October 2 memorandum, and on October 18, 2007, Rever issued a memorandum proposing King's removal from federal service.   See Motion ¶¶ 16-17, at 7.   King notes that the memorandum states that Clark would "make a final determination on [the] proposal."   Exhibit 10 to Response, Memorandum from Jack Rever to John King at 14 (dated October 18, 2007)(Doc. 110-11).   King states that Clark has never responded to his e-mail and that, upon receiving the memorandum proposing his removal, he realized he would be fired and therefore decided to tender his resignation. See King Aff. ¶ 26, at 4-5.   King resigned effective October 30, 2007.   See Motion ¶ 18, at 7; Response ¶ 24, at 7.

## PROCEDURAL BACKGROUND

On February 14, 2008, King received his right to proceed with the formal EEO process and filed a Formal Complaint of Discrimination involving allegations about Rever's conduct the same day.   See Motion ¶ 19, at 7.   DOI accepted the complaint for investigation.   See id. ¶ 20, at 7.   King filed a Second Amended Complaint on August 28, 2008.   See Second Amended Complaint for Discrimination, Retaliation, Hostile Work Environment and Constructive Discharge, filed August 28, 2008 (Doc. 109)("SAC").   This new Complaint principally adds allegations involving Rever.

The Defendant now moves the Court for summary judgment on a number of the allegations in the Amended Complaint.   The Defendant argues that the Second Amended Complaint abandons any allegations of hostile work environment not involving Rever.   The Defendant further contends that the evidence King offers is insufficient to show that Rever created a hostile work environment,

retaliated against King, or forced King to resign.

## ANALYSIS

The Defendant's motion seeks summary judgment on the allegations against Rever in paragraphs 2, 43-65, and 66-90 of the Second Amended Complaint. Specifically, the Defendant contends that there is insufficient evidence to support claims against Rever involving: (i) hostile work environment; (ii) retaliation; and (iii) constructive discharge. Additionally, the Defendant argues that King has abandoned his claim for hostile-work environment against Collier, Ken Ross, and Robinson. The Court concludes that King has not abandoned any of his earlier claims. Because the actions underlying King's retaliation claim are either not sufficiently severe or are explained by legitimate reasons that King has not adequately rebutted, King has not shown any viable retaliation claims, nor has he show a viable retaliatory hostile work-environment claim. Additionally, King has not shown that his resignation was the result of intolerable working conditions that left him no options but resignation and so cannot support a constructive discharge claim. Finally, the Court does not read the Second Amended Complaint as asserting causes of action involving Rever for race discrimination or for declaratory relief.

## I.   KING HAS NOT ABANDONED HIS CLAIMS FOR HOSTILE WORK ENVIRONMENT AGAINST COLLIER.

The Defendant argues that the Second Amended Complaint names only Rever as having created a hostile work environment. The Defendant contends that this Second Amended Complaint supersedes the previous Complaints and thus King has abandoned previous hostile-work environment claims. King maintains that he had no intent to abandon any claims and asks that he be allowed to amend his Complaint if necessary to clarify this point. King also clarifies that his earlier hostile work-environment claims involve only Collier's behavior, and that he has never

alleged hostile work environment against Ross or Robinson.  Because the Second Amended Complaint only adds material, without deleting any allegations, the Court concludes that the Second Amended Complaint cannot be read as abandoning any causes of action.

The Second Amended Complaint contains a section of background allegations entitled "Allegations Concerning Retaliation and Hostile Work Environment by Jack Rever."  SAC at 8 (emphasis removed).  This section, with some peripheral mention of Robinson, concerns Rever's actions.  See id. ¶¶ 42-65, at 8-11.  The Second Amended Complaint also has a hostile work-environment count stating that "Jack Rever failed to comply with the Civil Rights Act of 1964," SAC ¶ 81, at 13, but which also incorporates all seventy-nine preceding paragraphs, see id. ¶ 80, at 13.

King's First Amended Complaint does not expressly allege hostile work environment as a cause of action.  Instead, King alleges hostile work environment as part of his recitation of various facts.  For instance, the First Amended Complaint alleges: "The actions taken against the Plaintiff created a severe and pervasive harassment in the workplace, rendering Plaintiff's work environment so hostile and intimidating that he could not perform the essential functions of his job."  First Amended Complaint of Discrimination and Retaliation in Federal Employment ¶ 20, at 4, filed March 21, 2008 (Doc. 25)("FAC").  The First Amended Complaint also alleges hostile work environment in two other paragraphs.  See id. ¶¶ 4, 15, at 2, 3-4.

The Second Amended Complaint retains all the sections from the First Amended Complaint that mention hostile work environment.  Compare FAC ¶¶ 4, 15 & 20, at 2, 3 & 4, with SAC ¶¶ 4, 15 & 20, at 2, 4.  The most recent Complaint only adds new allegations to the allegations previously pled. The Defendant has previously challenged the sufficiency of King's hostile work-environment claims, but has never argued that the First Amended Complaint failed to allege the basics of such

a claim.  Indeed, the Court has held that King has a valid hostile work-environment claim resting on several allegations.

King's recent revisions obscure the scope of his claim because he expressly lays out a separate hostile-work environment claim without modifying his previous pleadings, which alleged hostile work environment in a more indirect way.  The apparent contradiction King's amendment creates is a result of inartful drafting, but the Court cannot read it as abandoning King's past claims.  By itself, the Second Amended Complaint might be more ambiguous, but particularly when compared with the First Amended Complaint, it is evident to the Court that King intended to retain his hostile work-environment claim involving Collier.  The allegations against Rever are largely tacked onto the First Amended Complaint to create the Second Amended Complaint.  None of the allegations that have been interpreted in the past to give rise to a hostile-work environment claim have been eliminated from the language of the latest Complaint.  The Court therefore does not understand King to have abandoned his claims and will read the Second Amended Complaint as continuing to assert a hostile work-environment claim that encompasses various alleged actions that Collier took.

## II.    NONE OF KING'S RETALIATION CLAIMS CAN SURVIVE SUMMARY JUDGMENT.

To establish a prima-facie case of retaliation under Title VII, King must show: (i) that he engaged in protected activity under Title VII; (ii) that he suffered a materially adverse employment action contemporaneous with engaging in the protecting activity or after engaging in the protected activity; and (iii) that there is a causal connection between the protected activity and the adverse action.  See Chavez v. New Mexico, 397 F.3d 826, 838 (10th Cir. 2005).  Once a plaintiff alleges all three elements of retaliation, the burden shifts to the defendant to assert legitimate, non-

retaliatory reasons for each of the alleged acts. If the defendant offers legitimate non-retaliatory reasons for each of the alleged acts, the burden shifts back to the plaintiff to demonstrate why the defendant's proffered reasons are unworthy of belief. See Annett v. University of Kansas, 371 F.3d 1233, 1237 (10th Cir. 2004).

The Defendant contends that: (i) King did not suffer any materially adverse employment actions; and (ii) that Rever had legitimate, non-discriminatory reasons for the actions he took. Additionally, at the hearing, Dori Ellen Richards, the Defendant's counsel, focused on the issue of causation. The Court concludes that only King's reassignment to Reston can be an adverse employment action. King has demonstrated sufficient temporal proximity to show causation and has thus shown a prima-facie case of retaliation for the reassignment. The Defendant, however, has a legitimate reason for the reassignment which King is unable to rebut.

King does not address in his Response several of the discrete acts of retaliation that the Defendant challenges as not being materially adverse: (i) the increased scrutiny of King's travel requests; and (ii) non-responsiveness to King's requests for written directives about King's authority in managing the new program. Nonetheless, the Court has considered these allegations fully, but concludes that they are not materially adverse employment actions. As the Court has already held previously, increased scrutiny of travel requests is not sufficiently severe to sustain a retaliation claim. See Memorandum Opinion and Order at 5, entered September 30, 2008 (Doc. 116)(holding that, even if increased requirements for travel requests were a departure from past practice, they would not constitute materially adverse employment actions). Non-responsiveness is also not a sufficiently severe action to deter a reasonable employee from asserting his rights or otherwise engaging in protected activity. See Memorandum Opinion and Order at 18, 21, entered September 30, 2008 (Doc. 115)(failing to respond to request for explanation was not severe enough to be

adverse).

In his Response, King focuses on three potentially adverse employment actions: (i) the additional duties he was assigned; (ii) the reassignment to Reston; and (iii) Rever's proposal that his employment be terminated.  Of these three actions, only the reassignment to Reston is severe enough to be a materially adverse employment action.

King's assuming additional duties was not an adverse employment action.  King primarily argues that he was being set up to fail because he was not provided with a budget or staff.  The program of which King was placed in charge, however, was in its infancy and King did not have any of his duties or authority as an OFMC supervisor removed when he was given responsibility for the new program.  Nor does King give any indication that the additional duties, combined with his existing duties, were so burdensome as to make the assignment of new duties an adverse action. Instead, he relies on his conclusory belief that he was being positioned for failure.  While the Court believes that overworking an employee or setting an employee up to fail could be a materially adverse employment action, King has failed to adduce evidence showing that either of these possibilities might be met here.  Alternatively, as the Court discusses below, the Defendant has presented a legitimate reason for Rever's actions, which King is unable to rebut.

By contrast, the reassignment to Reston was an adverse employment action.  The Defendant argues that King's detail to Reston was at most a temporary and trivial inconvenience.  King, however, indicated to Clark, whom he asked to intervene on his behalf with Rever, that such a detail would present unusual hardship to him because of his family responsibilities.  Moreover, as Rever's October 2, 2007 memorandum clarifies, the detail meant that King was no longer responsible for his supervisory duties at OFMC.  Under the circumstances, the ordered detail was sufficiently severe and prolonged that it could be an adverse employment action.

Lastly, Rever's termination proposal was not an adverse action.  Under United States Court of Appeals for the Tenth Circuit case law, unrealized threats of termination are not adverse employment actions.  See Dick v. Phone Directories Co., Inc., 397 F.3d 1256, 1268 (10th Cir. 2005)(noting that Tenth Circuit has "never expressly held that an unrealized threat of termination, without more, constitutes an adverse employment action"); Cole v. Ruidoso Mun. Schools, 43 F.3d 1373, 1381 (10th Cir. 1994)(holding that threats not carried out are not adverse employment actions).  In Jeffries v. State of Kan., 147 F.3d 1220 (10th Cir. 1998), abrogated in part on other grounds by Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998), and Faragher v. City of Boca Raton, 524 U.S. 775 (1998), the Tenth Circuit noted the possibility that unrealized threats of termination might be adverse employment actions in certain circumstances, such as close working relationships in which the unrealized threat is particularly damaging to the working environment.  See Jeffries v. State of Kan., 147 F.3d at 1232.  Such special circumstances are not present here.  Indeed, Rever's proposal was not only an unrealized threat of termination, it was only a recommendation of termination that left a final decision up to Clark, not Rever.

At the hearing, Ms. Richards pressed the issue of causation.  King, however, has a strong case based on temporal proximity that the reassignment was retaliatory.  Rever was informed that a complaint was filed against him on August 24, 2007, and less than a month later, on September 13, 2007, he issued the memorandum detailing King to Reston.  The small amount of time that elapsed allows for an inference of causation.  See Annett v. University of Kansas, 371 F.3d at 1240 (holding that approximately two to three months delay was sufficient temporal proximity to show causation for prima-facie case).

The inference of causation may be neutralized, however, if Rever did not know that the individual filing a complaint against him was King.  The Defendant emphasizes the general nature

-11-

of the information conveyed to Rever.  At the hearing, Ms. Richards also stated that, although she was unsure how many employees Rever supervised and how many complaints might be made against him in any given year as a consequence of his position, it was unlikely that Rever would be able to connect the mere knowledge that a complaint had been filed to King.  The Court can imagine that a busy government executive might receive many notices that formal complaints had been lodged against him and never have a sense of who the complainants were.  The Court, however, has no evidence before it about whether Rever's situation fits this hypothesis.  It might also be the case that complaints are infrequently filed against Rever and that they are more striking than Ms. Richards argues.  Moreover, it is clear that there was some tension between Rever and King.  Given the situation, it would be a reasonable to infer that Rever might suspect or believe that the complaint lodged against him was King's.  Because a jury could infer that Rever was aware of the complaint and because of the closeness between the complaint and the reassignment, a jury could reasonably find causation.

The Court thus concludes that King has made a prima-facie case of retaliation regarding the detail to Reston.  The Defendant, however, has put forward sufficient evidence that Rever had legitimate reasons for his actions.  At his deposition, Rever testified that he wanted King to temporarily be in Reston to assist Rever with working out the final details for the facilities program.  See Exhibit 2 to Motion, Deposition of Jack Rever, P.E. at 48:18-49:6 (taken July 15, 2008)(Doc. 110-3)("Rever Depo.").  Rever also testified that he thought King's work on the program had shown some deficiencies that needed addressing.  See id. at 50:19-52:9.  This explanation that the transfer was a legitimate management decision related to the development of the program is a reasonable explanation that the evidence the Defendant offers supports.  The burden therefore shifts back to King to rebut the explanation.

-12-

The Defendant has also presented sufficient evidence about the reasons for giving additional duties to King without, in King's view, sufficient resources. According to the Defendant, the leased-facilities program was a young program that was in the developmental phase and a final organizational structure and budget for the office of leased-facilities management had yet to be approved. <u>See</u> Motion ¶ 6, at 5; Rever Depo. at 13:2-17. Rever estimated that, as the program developed, the office would have a million-dollar budget and King would have an administrative assistant and possibly additional staff, depending on the program's growth. <u>See</u> Rever Depo. at 13:18-14:19. This explanation is a reasonable one and serves to shift the burden to King to present rebuttal evidence.

In rebuttal, King relies on two points: (i) that the Defendant has failed to "state any reason (legitimate or not) for" the detail, Response at 14; and (ii) the suspicious timing of the decision, coming on the heels of King's complaint against Rever. The first point is an attack on whether the Defendant has shown any legitimate reasons, which the Court concluded that the Defendant has done. For rebuttal, then, King essentially is relying on temporal proximity. <u>See</u> Transcript of Hearing at 61:3-4 (taken November 7, 2008)(Dahl)(stating "we do not have any further evidence other than the timing, although the timing is extremely suspect").[2] While close temporal proximity will suffice to show causation in establishing a prima-facie case, it is not sufficient to show pretext. The Tenth Circuit has held that, in a Title VII case, "close temporal proximity is a factor in showing pretext, yet is not alone sufficient to defeat summary judgment." <u>Annett v. University of Kansas</u>, 371 F.3d at 1240. Because King's only evidence of pretext is temporal proximity, he is unable to rebut the legitimate reasons that the Defendant has presented. Accordingly, although King has

_____

[2] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may have different page and/or line numbers.

shown a prima-facie case on one of his retaliation claims involving Rever, that claim must ultimately fail.  King's claim that he was set up for failure, assuming that it was an adverse action, would similarly fall.

## III.   KING HAS NOT SHOWN SUFFICIENT EVIDENCE TO SUPPORT A RETALIATORY HOSTILE WORK-ENVIRONMENT CLAIM.

It is not clear that the Tenth Circuit recognizes retaliatory hostile work environment as a cause of action, as opposed to the more typical discrete retaliation claim.  The Tenth Circuit has mentioned the concept in an unpublished opinion, Lujan v. Johanns, 181 Fed.Appx. 735 (10th Cir. 2006), but has apparently not definitively held that such a claim is available in the Tenth Circuit. The Defendant, however, has argued for summary judgment on the assumption that such claims are available, see Motion at 20, and the Court will also assume, without deciding, that King may bring a claim for retaliatory hostile work environment.  Noviello v. City of Boston, 398 F.3d 76 (1st Cir. 2005), the case the Tenth Circuit cited when mentioning retaliatory hostile work environment, describes the cause of action as requiring "severe or pervasive harassment that materially alter[s] the conditions of [an employee's] employment . . . . in retaliation for engaging in protected activity . . . ." Id. at 92 (cited in Lujan v. Johanns, 181 Fed.Appx. at 738).

King relies on the same conduct underlying his various discrete allegations of retaliation in support of his retaliatory hostile work environment claim.  Some of the earlier individual incidents that King alleges cannot be part of the claim, because King does not have any evidence that would support causation for those incidents.  See Fallon v. Potter, 277 Fed.Appx. 422, 425 (5th Cir. 2008)(finding that the plaintiff "failed to show a conflict in substantial evidence on the issue of causation for many of his claims" on account of a number of the incidents pre-dating any protected activity).  Temporal proximity is the only basis King has advanced for supporting causation, which

would allow only for an inference of causation from August 24, 2007 onward.  The incidents that

fit within this time-frame are: (i) increased scrutiny of a travel request; (ii) reassignment to Reston;

and (iii) being declared absent-without-leave and recommended for termination.  It may be that these

incidents, in the aggregate, would support a hostile work-environment claim.  The Defendant,

however, has legitimate reasons for these actions, with the possible exception of the increased

scrutiny of the travel request.  See id. at 427-38 (holding that plaintiff failed to sufficiently rebut the

employer's legitimate reasons for various incidents comprising a retaliatory hostile work-

environment claim).  That lone incident, though, does not demonstrate a hostile work environment.[3]

　　　As the Court held above, the Defendant had a legitimate, non-retaliatory reason for

reassigning King to Reston.  Additionally, the Defendant has proffered legitimate reasons for

placing King on absent-without-leave status and for Rever suggesting that King be fired.  The

Defendant justifies both of these decisions on the grounds that King was insubordinate in failing to

report to Reston and in failing to contact Rever as ordered.  This explanation is reasonable and

---

　　　[3] The Court recognizes that, in evaluating a hostile work-environment claim, it cannot view individual incidents in isolation.  A string of incidents that are individually not sufficiently severe to be materially adverse actions may nonetheless, in the aggregate, add up to a hostile work environment.  Here, however, there is no evidence of causation -- the third element that King must show to establish his prima-facie case -- or of pretext for many of the incidents King alleges, and thus the Court does not consider those particular incidents to have much weight in determining whether King has presented sufficient evidence of a retaliatory hostile work environment.  As the First Circuit has noted, there is a

> unique difficulty posed by allegations of retaliatory harassment. When dealing with discriminatory harassment (e.g., harassment based on gender, race, or the like), there is seldom, if ever, a defensible purpose behind the injurious actions. The only question is whether the bad acts, taken in the aggregate, are sufficiently severe or pervasive to constitute actionable harassment.

Noviello v. City of Boston, 398 F.3d at 92-93.

legitimate.  Again, King cannot overcome this explanation solely through reliance on temporal proximity.  Accordingly, the explanation stands.

The Defendant also points to the increased scrutiny of King's travel requests instituted some twenty-three months earlier as a legitimate reason for the increased scrutiny Rever gave the travel request.  It is not clear whether the increased scrutiny was a general measure that was to be employed by all of King's supervisors or whether Rever's scrutiny was independent of the earlier decision.  Additionally, whether this reason that stretches back almost two years before the incident at issue here is legitimate, and whether it is pretextual, involves a significantly greater set of facts than the other issues here.  It may be that the Defendant has a legitimate explanation that King cannot rebut.  Given that a single incident of increased scrutiny of a travel request will not support a hostile work-environment claim, however, the Court need not delve into that particular issue.

**IV.  KING CANNOT SUSTAIN A CONSTRUCTIVE-DISCHARGE CLAIM BECAUSE HE HAS NOT PRESENTED EVIDENCE THAT HIS EMPLOYMENT SITUATION WAS SO INTOLERABLE THAT A REASONABLE PERSON WOULD HAVE FELT HE HAD NOT CHOICE BUT TO RESIGN.**

A plaintiff seeking to prove a claim of constructive discharge faces a heavy burden.  As the Court has noted before, "the bar is quite high in constructive discharge cases."  Barber v. Lovelace Sandia Health Systems, 409 F.Supp.2d 1313, 1330 (D.N.M. 2005)(Browning, J.)(internal quotation marks and brackets omitted).  "Constructive discharge occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign.  Essentially, a plaintiff must show that she had *no other choice* but to quit."  Sandoval v. City of Boulder, 388 F.3d 1312, 1325 (10th Cir. 2004)(emphasis in original)(internal quotation marks omitted).  Whether an employee who resigned was constructively discharged is principally analyzed under a four-factor test: "(1) whether the

employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; and (4) whether he was permitted to select the effective date of resignation." Yearous v. Niobrara County Memorial Hospital, 128 F.3d 1351, 1356 (10th Cir. 1997)(internal quotation marks and alterations omitted). The adversity that King states led him to resign is not severe enough to make out a prima-facie case of constructive discharge.

King relies on the same basic events to support his claim for constructive discharge as he does for his retaliation and hostile work-environment claims. While there is evidence that the reassignment is a materially adverse-employment action, all the incidents, even in the aggregate, are not sufficient to support a finding of constructive discharge. Even if the Court accepts all of King's allegations as true, the circumstances alleged are not so severe that "a reasonable person in the employee's position would feel compelled to resign." Sandoval v. City of Boulder, 388 F.3d at 1325 (internal quotation marks omitted).

King primarily argues that, because the person in charge of making a final decision whether to terminate his employment or not was Clark, who had ignored his request to intercede with Rever over his reassignment to Reston, a reasonable employee would understand they were going to be fired and feel compelled to resign. For a threat to fire someone to amount to constructive discharge, the threat must place the employee under duress, leaving him no option but to resign. See Parker v. Board of Regents of Tulsa Jr. College, 981 F.2d 1159, 1162 (10th Cir. 1992). Here, however, it is not even certain that King was threatened with termination. The sole basis King has for believing that he was going to be fired was that Clark had failed to respond to his request to intervene with Rever. There is a significant logical gap between Clark's failure to respond and the proposition that Clark was certain to decide that King should be fired. King may have subjectively believed that he

-17-

was going to be fired, but the Court must view the situation objectively and disregard "the employee's subjective view of the workplace environment . . . ." <u>Baca v. Sklar</u>, 398 F.3d 1210, 1216 (10th Cir. 2005).

Even if the Court assumed that it was reasonable for King to have believed that a referral to Clark amounted to threat of termination, King's resignation would still be voluntary under the four factors from <u>Yearous v. Niobrara County Memorial Hospital</u>. First, King was given an alternative to resignation. He had the option of contesting the proposal and submitting information to Clark about why he should not be fired. Second, there is no indication that King did not understand the nature of his options. Third, he had at least two weeks to respond to the proposal, and any termination of employment was at least thirty days away. The Tenth Circuit has found that an employee was given adequate time when allowed as little as one week. <u>See</u> <u>Parker v. Board of Regents of Tulsa Jr. College</u>, 981 F.2d at 1162. The minimum of two weeks that King was given is particularly noteworthy, because King already had counsel at this time and thus would have been able to consult with an attorney about his options. <u>See id.</u> (noting that one week time-frame gave time for consultation with a lawyer). Finally, King was able to select the date of his resignation. He still had time left to respond to the charges against him when he chose to resign effective October 30, 2007. King again argues that he was not given a genuine choice under the factors, because Clark was certain to decide to end his employment. Again, however, King has nothing to support this belief but his speculation that Clark's non-responsiveness to an earlier request meant that she would decide to fire him. The evidence, with all reasonable inferences drawn in King's favor, still indicates that King's decision to resign was voluntary and not the product of duress. Because his resignation was voluntary, King cannot bring a claim for constructive discharge.

**V.    THE COURT DOES NOT READ KING'S COMPLAINT AS ASSERTING CLAIMS FOR RACIAL DISCRIMINATION INVOLVING REVER.**

In his Response, King states that he "makes a total of five claims involving the behavior of Jack Rever."  Response at 22.  Because the Defendant did not move on the claims for race discrimination and declaratory relief, King requests that the Court not dismiss those claims regardless what it does with the other claims.  The Defendant counters that King's asserting a race discrimination claim Rever is "frankly frivolous."  Defendant's Reply to his Motion for Summary Judgment on Claims Against Rever in Second Amended Complaint (Doc. 109, ¶¶ 2, 42-65), Hostile Work Environment and Supporting Memorandum of Law at 13, filed October 29, 2008 (Doc. 124)("Reply").  The Defendant asserts that, in his deposition, King stated, despite repeated questioning, that he was not asserting any race-discrimination claims against Rever.  The Defendant also argues that a claim for declaratory relief is merely a statement of the relief King seeks and not a theory of discrimination.  The Court agrees with the Defendant.

The Second Amended Complaint mentions Rever specifically in the counts alleging retaliation, hostile work environment, and constructive discharge.  The counts for race discrimination and declaratory relief make only general references to "the Defendant."  Given the factual allegations in the Complaint, the Court finds it difficult to see a basis for King asserting a race-discrimination claim against Rever.  Combined with the generality of the pleadings in that count, the Court does not construe the race-discrimination claim to involve Rever's actions.  Additionally, King's claim for declaratory relief is a request for a particular remedy and not a separate theory, although it would be dependent on a finding of at least some liability on a cause of action.  Accordingly, the Court will not dismiss either count, but neither does it read the Second Amended Complaint as making either count a specific theory of liability involving Rever's actions.

-19-

**IT IS ORDERED** that the Defendant's Motion for Summary Judgment on Claims Against Rever in Second Amended Complaint (Doc. 109, ¶¶ 2,) and Hostile Work Environment Claims and Supporting Memorandum of Law is granted in part and denied in part.  The Court will not deem Plaintiff John I. King to have abandoned any of his previous claims.  The Court will, however, dismiss all the claims that rely on Jack Rever's actions.  The Court also notes that it does not interpret Counts I and III of the Second Amended Complaint as asserting causes of action that involve Rever's conduct.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Jeffrey A. Dahl
Keleher & McLeod, P.A.
Albuquerque, New Mexico

 *Attorney for the Plaintiff*

Gregory J. Fouratt
 United States Attorney
Michael H. Hoses
John W. Zavitz
 Assistant United States Attorneys
Dori Ellen Richards
 Special Assistant United States Attorney
Albuquerque, New Mexico

 *Attorneys for the Defendant*